## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

DARREN BRASHER, *et al.*
Individually and on
behalf of all others similarly situated,

                Plaintiffs,

      v.

GANNETT CO. INC., GANNETT
SATELLITE INFORMATION NETWORK,
LLC, and GCOE, LLC

                Defendants.

Case No. 3:19-cv-00296-JHM-RSE

JURY TRIAL DEMANDED

COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)

CLASS ACTION PURSUANT TO FED. R. CIV. P. 23

---

### PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-SUPERVISED NOTICE TO PUTATIVE CLASS MEMBERS PURSUANT TO 29 U.S.C. § 216(b)

---

**TO THE HONORABLE JOSEPH H. McKINLEY, JR.:**

Plaintiffs Darren Brasher and Nicole Love, on behalf of themselves and all opt-in plaintiffs and others similarly situated ("Plaintiffs and the Putative Class Members"), respectfully move, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for entry of an order:

(1)    Conditionally certifying the proposed collective FLSA class as defined herein;

(2)    Implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, e-mail, and text-message) to:

**All hourly call-center employees who have been employed by Gannett Co. Inc., Gannett Satellite Information Network, LLC, GCOE, LLC, and/or any other subsidiary of Gannett Co., Inc. anywhere in the United States, at any time from September 3, 2016 through the final disposition of this matter. ("Putative Class Members").**

(3)    Approving a Reminder Email to be sent to Putative Class Members halfway through the 60-day notice period; and

(4)     Requiring Defendants to, within fourteen (14) days of this Court's order, identify all Putative Class Members by providing a list in electronic and importable format, of the names, addresses, and e-mail addresses of all Putative Class Members who worked for Defendants at any time from beginning three years immediately preceding the filing of the Original Complaint through the present.

This Motion is based on the pleadings, memoranda, declarations, and argument of Counsel.

The relief sought is appropriate for the reasons discussed in the Memorandum of Law below.

Date:   September 3, 2019                    Respectfully submitted,

                                            ANDERSON ALEXANDER, PLLC

                        By:     /s/ Clif Alexander
                                **Clif Alexander** (*Admitted Pro Hac Vice*)
                                Texas Bar No. 24064805
                                clif@a2xlaw.com
                                **Austin W. Anderson** (*Admitted Pro Hac Vice*)
                                Texas Bar No. 24045189
                                austin@a2xlaw.com
                                Texas Bar No. 24071993
                                819 N. Upper Broadway
                                Corpus Christi, Texas 78401
                                Telephone: (361) 452-1279
                                Facsimile: (361) 452-1284

                                BARKAN MEIZLISH HANDELMAN
                                GOODIN DEROSE WENTZ, LLP

                        By:     /s/ Robert E. DeRose
                                **Robert E. DeRose** (*Admitted Pro Hac Vice*)
                                bderose@barkanmeizlish.com
                                **Jessica R. Doogan** (*Admitted Pro Hac Vice*)
                                jdoogan@barkanmeizlish.com
                                250 E. Broad St., 10th Floor
                                Columbus, Ohio 43215
                                Telephone: (614) 221-4221
                                Fax: (614) 744-2300

**THE LAWRENCE FIRM, PSC**

By:      /s/ *Anne L. Gilday*

**Anne L. Gilday** (KY Bar No. 90126)
Anne.gilday@lawrencefirm.com
606 Philadelphia Street
Covington, KY 41011
Telephone: (859) 578-9130
Fax: (859) 578-1032

*Attorneys in Charge for Plaintiffs and Putative Class Members*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| DARREN BRASHER, *et al.*<br>Individually and on<br>behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GANNETT CO. INC., GANNETT<br>SATELLITE INFORMATION NETWORK,<br>LLC, and GCOE, LLC<br><br>        Defendants. | Case No. 3:19-cv-00296-JHM-RSE<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL CERTIFICATION AND COURT SUPERVISED NOTICE TO PUTATIVE CLASS MEMBERS PURSUANT TO 29 U.S.C. § 216(b)**

---

## I.    INTRODUCTION

This is a nationwide collective and class action lawsuit for unpaid overtime wages brought under the Fair Labor Standards Act and state wage law. Plaintiffs and the Putative Class Members are all hourly, non-exempt individuals who worked for Defendants Gannett Co. Inc., Gannett Satellite Information Network, LLC, GCOE LLC, and/or any other subsidiary of Gannett Co., Inc. (collectively "Gannett")[1] throughout the United States in the past three years. Plaintiffs challenge Gannett's unlawful company-wide policy that forces its hourly Call-Center Employees[2]—Plaintiffs

---

[1] Joint employer liability generally goes to the merits of a case and is not relevant to deciding whether a case should be conditionally certified. *Kis v. Covelli Enterprises, Inc.*, No. 4:18-CV-434, 2018 WL 2227782, at *2 (N.D. Ohio May 16, 2018). As a merits issue, it is better decided at the second stage of conditional certification. *Id.*

[2] Plaintiffs' definition of "Call-Center Employees" includes those employees who worked as Customer Care Agents I–III, Customer Retention Specialists I–II, Inside Sales Representative, Collections Specialist, Customer Service Representative & Sales Representative, Floor Leads, Quality Assurance Specialist, Customer Service Specialist, Email Chat Representative, Traffic Analysts, Technical Customer Care Representative,

and the Putative Class Members—to perform unpaid "off-the-clock" work. Specifically, Gannett's adherence policy forces Plaintiffs and the Putative Class Members to report to work early and perform their start up tasks, such as logging into their programs, and/or checking and answering emails, "off-the-clock." Adherence governs employees' path to promotions, raises, write ups, and termination. Should Call-Center Employees clock in early, or clock in and not immediately begin their non-start up tasks (taking calls, answering customer emails, monitoring employee calls, assisting employees with calls, etc.) at their shift start time, their adherence is hurt which can lead to write ups and even termination. To have good adherence, a Call-Center Employee must have their systems up and running prior to their shift start so they can begin making calls right at their start time, this necessitates coming in early and getting ready "off-the-clock."

Accordingly, Plaintiffs seek conditional certification of the following class:

**All hourly call-center employees who have been employed by Gannett Co. Inc., Gannett Satellite Information Network, LLC, GCOE, LLC, and/or any other subsidiary of Gannett Co., Inc.  anywhere in the United States, at any time from September 3, 2016 through the final disposition of this matter. ("Putative Class Members").**

Because there are hundreds, if not thousands, of other Gannett call center employees who are unaware of this lawsuit or their right to proceed in this forum, notice to the Putative Class Members should issue to allow the Putative Class Members to make an informed decision of whether or not to join this case.[3] Further, the recovery for each Putative Class Member is eroding daily because the statute of limitations does not toll until they file their consent forms. Therefore, the Court should authorize Notice as soon as possible to prevent further diminishing of the Putative Class Members'

---

Coaching Training and Escalation Assistant, Coaching Escalation and Training Team, and any other hourly non-exempt employee who clocked in through a computer software program (such as ADP) and were subject to Gannett's adherence metric.

[3] Plaintiff's proposed Notice and Consent form is hereby attached as Exhibit 62.

rights.

## II.   STATEMENT OF FACTS

Gannett is a leading media and marketing company controlling over 109 media organizations (including USA Today) and delivering daily news to millions of customers nationwide.[4] To provide these services, Gannett employs thousands of Call-Center Employees around the United States to help customers sign up for their news services, modify the current services, and troubleshoot any issues they may have with their services. On January 21, 2019, Plaintiffs commenced this collective/class action against Gannett, alleging that the company failed to pay its hourly, non-exempt, Call-Center Employees for all hours worked, including the correct amount of overtime compensation. *See* ECF No. 1. Plaintiffs asserted the FLSA claims as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and their respective state law claims as class actions under Federal Rule of Civil Procedure 23.[5]

Plaintiff Brasher, Love, and the Opt-in Plaintiffs collectively worked for Gannett at Gannett's call centers in multiple states.[6] Gannett's uniform policies and procedures apply equally at each of its facilities across the United States. Specifically, Plaintiffs challenge the illegal company-wide policy and procedure whereby Gannett requires Plaintiffs and the Putative Class Members to begin work several minutes early each day to complete the necessary start up processes to ensure they can clock in directly at the beginning of their scheduled shift. *See* Declaration ("Decl.") of Nicole Hoir, at ¶ 10 (attached as Exhibit 1 to this Motion); Decl. of Ashley Bohannon, at ¶ 10 (Ex. 2); Decl. of Alexander Quinshade

---

[4] https://www.gannett.com/who-we-are/

[5] Plaintiff Brasher and Love have also brought claims arising under the state laws of Kentucky and South Carolina, which qualify as a Federal Rule of Civil Procedure 23 class action. Plaintiffs move only for conditional certification under FLSA section 216(b), and not Rule 23 class certification, at this time.

[6] At the time of filing this Motion and Brief in Support, 92 current and former hourly call center employees have filed a consent to join this lawsuit.

Jackson, at ¶ 10 (Ex. 3); Decl. of Breauna Young, at ¶ 10 (Ex. 4); Decl. of Nicole Love, at ¶ 10 (Ex. 5); Decl. of Tameka McBree, at ¶ 10 (Ex. 6); Decl. of Tami Rae Mosley, at ¶ 10 (Ex. 7); Decl. of Adelley Lassey, at ¶ 10 (Ex. 8); Decl. of Aurellia S. Oates, at ¶ 10 (Ex. 9); Decl. of Brandie Herp, at ¶ 10 (Ex. 10); Cornita Anderson, at ¶ 10 (Ex. 11); Decl. of Chelsie Clark, at ¶ 10 (Ex. 12); Decl. of Carrie Conaster, at ¶ 10 (Ex. 13); Decl. of Cochita Hendrix, at ¶ 10 (Ex. 14); Decl. of Chelsey Thompson, at ¶ 10 (Ex. 15); Decl. of Daarina Boyd, at ¶ 10 (Ex. 16); Decl. of Darren Brasher, at ¶ 10 (Ex. 17); Decl. of David Clayton, at ¶ 10 (Ex. 18); Decl. of Danielle Gibson, at ¶ 10 (Ex. 19); Decl. of Diamond Maddox, at ¶ 10 (Ex. 20); Decl. of Dorothea Williams, at ¶ 10 (Ex. 21); Decl. of Ebony Barnes, at ¶ 10 (Ex. 22); Decl. of Endora Brown, at ¶ 10 (Ex. 23); Decl. of Erica Cooper, at ¶ 10 (Ex. 24); Decl. of Essence Jones, at ¶ 10 (Ex. 25); Decl. of Emerald Wimberly, at ¶ 10 (Ex. 26); Decl. of Jaquisha Maddox, at ¶ 10 (Ex. 27); Decl. of Kimberly Fisher, at ¶ 10 (Ex. 28); Decl. of Ke'aaron Morris, at ¶ 10 (Ex. 29); Decl. of Lanora Moore, at ¶ 10 (Ex. 30); Decl. of Leandra William, at ¶ 10 (Ex. 31); Decl. of Deedra Latham, at ¶ 10 (Ex. 32); Decl. of Melita Foree, at ¶ 10 (Ex. 33); Decl. of Melanie Howie, at ¶ 10 (Ex. 34); Decl. of Magnolia Jacobi, at ¶ 10 (Ex. 35); Decl. of Mary Madison, at ¶ 10 (Ex. 36); Decl. of Michelle Todd, at ¶ 10 (Ex. 37); Decl. of Melina Whitley, at ¶ 10 (Ex. 38); Decl. of Nikkia Houston, at ¶ 10 (Ex. 39); Decl. of Nasha Price, at ¶ 10 (Ex. 40); Decl. of Pauline Soden, at ¶ 10 (Ex. 41); Decl. of Ronella Jacoway, at ¶ 10 (Ex. 42); Decl. of Reginay D. Johnson, at ¶ 10 (Ex. 43); Decl. of Rick Mariani, at ¶ 10 (Ex. 44); Decl. of Rashawna Nelson, at ¶ 10 (Ex. 45); Decl. of Rosalind Pulce, at ¶ 10 (Ex. 46); Decl. of Rachel Way, at ¶ 10 (Ex. 47); Decl. of Shakela Brentt, at ¶ 10 (Ex. 48); Decl. of Shaquita Stark, at ¶ 10 (Ex. 49); Decl. of Sharita Walker, at ¶ 10 (Ex. 50); Decl. of Tierica Alexander, at ¶ 10 (Ex. 51); Decl. of Twinisha Bridgewater, at ¶ 10 (Ex. 52); Decl. of Tamara Williams, at ¶ 10 (Ex. 53); Decl. of Victoria Harris, at ¶ 10 (Ex. 54); Decl. of Valeria Howard, at ¶ 10 (Ex. 55); Decl. of Bernice Swearingen, at ¶ 10 (Ex. 56); Decl. of Deborah Turner, at ¶ 10 (Ex. 57); Decl. of Erica Pope, at ¶ 10 (Ex. 58); Decl. of Victoria Lyons, at ¶ 10 (Ex. 59).

### III.   ARGUMENT AND AUTHORITIES

**A.   Standard for Conditional Certification under Section 216(b)**

Under the FLSA, covered employers—like Gannett—are required to pay non-exempt employees no less than minimum wage for each hour worked, and one and one-half times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015) (Rice, J) (citing 29 U.S.C. §§ 206–07). The enforcement and remedy provisions created by the FLSA permit an employee to institute an action to recover unpaid minimum and/or overtime wages in either an individual or collective capacity. *See* 29 U.S.C. § 216(b). Under the collective action provisions, aggrieved employees may bring an action "for and on behalf of [herself] . . . and other employees similarly situated," provided that the "opt-in' plaintiffs file notices of written consent to sue with the Court. *Id.*

Certification of the FLSA collective action under Section 216(b) typically proceeds in two phases because unlike Rule 23 class actions, the statute of limitations on FLSA claims continues to run until respective putative collective members file written consents with the court. *Atkinson*, 2015 WL 853234, at *2 (*citing Lewis v. Huntington Nat'l Bank,* 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011)); *see also Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 582–83 (6th Cir. 2009); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 401–11 (6th Cir. 2017); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 864 (S.D. Ohio 2005). Accordingly, it is important that notice of the collective action be given to all Putative Class Members as soon as practicable so they can decide whether to participate in the lawsuit. *Comer*, 454 F.3d at 546; *O'Brien*, 575 F.3d at 582–83; *Monroe*, 860 F.3d at 401–11; *Harrison*, 411 F. Supp. 2d at 865; *see also Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000).

1.    **Notice Stage**

Plaintiffs' Motion focuses on the first stage of certification where plaintiffs need only show that they are similarly situated to the employees to be notified. *Comer*, 454 F.3d at 546; *Atkinson*, 2015 WL 853234 at *2. Since no discovery has occurred, Plaintiffs need only make a "modest showing" of being similarly situated to the Putative Class Members; and this standard is satisfied if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Atkinson*, 2015 WL 853234, at *2 (*citing Lewis*, 789 F. Supp. 2d at 867–68) (internal quotations omitted); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Application of this first-stage, "fairly lenient standard . . . typically results in conditional certification." *Atkinson*, 2015 WL 853234, at *2 (*citing Comer,* 454 F.3d 547).

Factors to be considered for conditional certification include "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Id.* (*citing Lewis,* 789 F. Supp. 2d at 868) (internal quotations omitted). At the conditional certification stage, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs.*, LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009).

2.    **Second Stage**

The second stage of the certification process occurs ***after*** conditional certification, after notice and after completion of discovery, and is typically only triggered ***if*** the defendant moves to decertify the class. *See Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010); *Atkinson*, 2015 WL 853234, at *3. At the second stage courts will apply a higher standard of scrutiny to determine whether the conditionally certified collective members are truly similarly situated. *See e.g., Wlotkowski*, 267 F.R.D. at 217 (the final certification decision is made at the second stage, "after all of

the opt-in forms have been received and discovery has concluded"); *see also Atkinson*, 2015 WL 853234, at *3. It is at the second stage when the court determines whether the action will proceed on a representative basis through trial on the merits or will be decertified. *Douglas v. GE Energy Reuter Stokes*, Civ. A. No. 1:07-CV-077, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007); *see also Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *5 (E.D. Mich. Mar. 23, 2012). Accordingly, since Gannett has the ability to seek decertification, its rights are not prejudiced by early notice and conditional certification.[7]

**B.     Plaintiffs Have Satisfied the Minimal Burden of Proof at this Notice Stage.**

At the notice stage, "[t]he burden of proof is relatively slight . . . because the Court is not making a substantive determination on the basis of all the evidence but simply adopting a procedure which permits notice to be given to other potential class members." *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 WL 6653632, at *4 (W.D. Tenn. Sept. 16, 2008). The Court does not determine whether a class of similarly situated plaintiffs actually exists; rather, it assesses whether the plaintiffs have made the "modest factual showing" of similarity of situation which merits the delivery of notice to potential plaintiffs of the litigation. *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011) (*quoting Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)); *see also Lewis*, 789 F. Supp. 2d 863, 867 ("Plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees.").

Plaintiffs and the Putative Class Members in this case are similarly situated within the meaning of 29 U.S.C. § 216(b). They are all current and former non-exempt hourly call center employees who

---

[7] In contrast, "[t]he second stage of analysis is much more stringent, and to avoid decertification, a plaintiff must meet a stricter standard of proving that the putative plaintiffs are 'similarly situated.'" *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006). "At this stage, because discovery is complete, the court has more information on which to base a factual determination of whether the plaintiffs are similarly situated." *Brasfield v. Source Broadband Servs., LLC*, No. 2:08-2092-JPM/dkv, 2008 WL 2697261, at *1 (W.D. Tenn. Jun. 3, 2009) citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir.1995)).

worked for Gannett during the relevant time period and have been subjected to the same illegal pay system. The Putative Class Members, like Plaintiff, were required to arrive before their scheduled shift to prepare their computer, software, and check their emails so they could be ready to perform their assigned duties, such as answering the phone, responding to emails, or assisting other agents on the phones as soon as their shift started—all while off the clock and unpaid—in violation of the FLSA.

### 1. Plaintiffs Have Presented Sufficient Evidence of a Class of Similarly Situated Individuals for Conditional Certification.[8]

Plaintiffs have produced fifty-nine (59) declarations from current and former hourly Call-Center Employees to show that Gannett's policy applied across multiple states and affected every single hourly Call-Center Employee who works (or worked) for Gannett. *See generally* Exs. 1–59. Although at this preliminary stage many courts accept "as true the plaintiff's allegations and do not reach the merits of the plaintiff's FLSA claims;" Plaintiffs here goes well beyond this low burden. *Ross v. Jack Rabbit Servs., LLC,* No. 3-14-cv-00044-TBR, 2014 WL 2219236, at *3 (W.D. Ky. May 29, 2014).

Further, Plaintiffs and the Putative Class Members are similarly situated and this Court should order company-wide notice based on the "substantial allegations" contained in the form of declarations and the pleadings on file. Plaintiffs have alleged that Gannett miscalculated their regular rate of pay by failing to include time spent working "off-the-clock". To comply with Gannett's Adherence policy, Plaintiffs and the Putative Class Members had to arrive before their scheduled shift to prepare their computer, software programs, and answer company emails so they could be "call ready"[9] at their shift start—all while off the clock and unpaid. Exs. 1–59, at ¶¶ 6–9. Indeed, Plaintiffs

---

[8] *See* Exhibits 1 thru 59—Declarations of Plaintiffs who worked in Gannett's call centers in Kentucky, South Carolina, and Wisconsin.

[9] The term "call ready" is a catch-all term used by Plaintiffs for simplicity. Being "call ready" applies to all Call-Center Employees who are required to perform specific tasks (such as responding to customer emails, listening in on employee calls, walking the floor, training employees, coaching employees, monitoring call traffic) at the start of their shift which necessitates preparing their computer, software programs, and answering company emails prior to clocking in on ADP at shift start. *See* Ex. 50, at ¶ 6; *See also* Ex. 1–59, at ¶ 5–6.

and the Putative Class Members have presented evidence of a single, company-wide policy that forces them to underreport the number of hours employees work regardless of location or supervisor. *See Monroe*, 860 F.3d at 404; *see also Abner v. Convergys Corp.*, No. 1:18-cv-442, 2019 WL 1573201, at *9 (S.D. Ohio Apr. 11, 2019) (ordering company-wide conditional certification for call-center employees who were not paid for their start-up times); *Sandoval v. Serco, Inc.*, No. 4:18-cv-01562 JAR, 2019 WL 2075910, at *7 (E.D. Mo. May. 10, 2019) (finding Plaintiffs to be similarly-situated victims of a common policy where Plaintiffs were not paid for their computer start up times); *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 825–26 (E.D. Mich. 2009) (finding Plaintiffs to be similarly-situated victims of a common policy or plan by Defendant where Plaintiffs were required to take calls at the start of their shift thus forcing them to come in early to log into their computers). The evidence proves that Plaintiffs and the Putative Class Members performed the same type of work, were paid an hourly rate, were subject to the same uniform Gannett Adherence policy, followed the same log-in procedure, and were required by Gannett—as a practical result of its policy—to begin working sufficiently in advance of their clock-in time so that they could be "call ready" at the time their scheduled shift started. Exs. 1–59, at ¶¶ 3–15.

## 2.    Gannett's Adherence Policy Forces Employees to Work "Off-The-Clock."

Gannett uses a key performance indicator known as Adherence to evaluate its hourly Call-Center Employees. Adherence is a key factor for Gannett's[10] employees career paths as it is a heavy factor in whether Gannett gives out, promotions, raises, demotions, write ups, and/or terminations. *See* Exs. 1–59, at ¶ 8. In order to have a high level of adherence under Gannett's formula, call center employees need to clock in right at their designated shift start time and immediately begin taking calls,

---

[10] Gannett Co. Inc., Gannett Satellite Information Network, LLC, and GCOE LLC use the same adherence policy. As discussed later, these companies are intermingled and largely indistinguishable from one another. Plaintiffs believe, and the evidence supports the inference that, the adherence policy is applied to all Call-Center Employees across every Gannett entity.

responding to customer emails, and/or walking the floor. Exs. 1–59, at ¶ 8. Taking calls, responding to customer emails, or otherwise beginning work after the designated shift start time damages a call center employees' adherence rating. Exs. 1–59, at ¶ 8. Similarly, clocking in before the designated shift start time can also damage adherence and lead to write ups by managers who are monitoring Call-Center Employees' clock in and work status. Exs. 1–59, at ¶ 8. Gannett's litany of software programs and requirement that employees check and respond to their company emails before their designated shift start time leaves Call-Center Employees in between a rock and a hard place. Should a Call-Center Employee clock in on time at shift start and then begin logging into their system, answering emails, and getting ready to begin work then the employee will not be able to begin work (take calls, respond to customer emails, assist other agents) at shift start, leading to a poor adherence level. Should the Call-Center Employee come in early, clock in, set up their computer, and check their emails so they can begin work at their designated shift start time, as required by Gannett, they will also have a poor adherence level because they clocked in before their scheduled start time. The **only** way a Call-Center Employee can conform with Gannett's adherence policy is to come in early, set up their computer, and check their emails "off-the-clock" and then clock in and begin taking calls, responding to customer emails, and helping other agents once their designated shift has begun. Gannett's adherence policy, in short, forces Call-Center Employees to work "off-the-clock" or else receive a bad adherence level which can eventually lead to their termination. Exs. 1–59, at ¶ 8.

### 3.   Plaintiffs and the Putative Class Members Performed Similar Job Duties

In addition to working under the same overarching corporate policies, Gannett's Call-Center Employees, such as Plaintiffs and the Putative Class Members, all performed the same or similar job duties—that is, their job function is to assist customers over the phone and email, or generally assist other Call-Center Employees who are on the phone (training, handling escalated calls, coaching, etc). *See* Exs. 1–59, at ¶ 5. This basic fact holds true for all of Gannett's call center locations, departments,

and call center positions throughout the United States.

All Plaintiffs and the Putative Class Members are similarly situated. They all perform nearly identical job functions. Exs. 1–59, at ¶ 5. They are all paid by the hour. Exs. 1–59, at ¶ 13. They are all subject to the same policies, they must abide by Gannett's adherence policy. Exs. 1–55, at ¶ 15; Exs. 56–59, at ¶ 21. While Gannett will undoubtedly ague that Plaintiffs and the Putative Class Members are not similarly situated due to differing job titles and slight variations in their job duties, that argument fails because Plaintiffs need not be *identical* to the Putative Class Members, they must merely show that they are "similarly situated." *See Lewis*, 789 F. Supp. 2d at 867-68; *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *3 (S.D. Ohio Aug. 10, 2017).

Indeed, Plaintiffs have presented evidence that the unpaid start-up policy extends far beyond one job title but instead affects all hourly Call-Center Employees universally and across all of Gannett. Exs. 1–59, at ¶ 4 (plaintiffs job titles include: Service Representative, Customer Care Agent I–III, Technical Customer Care Representative, Email Chat Representative, Training and Escalation Assistant, Coaching and Escalation Training Team, In House Sales Representative, Customer Service Representative, Retention Specialist I–II, Traffic Analyst, Quality Analyst, Quality Assurance Specialist, Floor Lead, Phone Trainer, Coaching Installation Agent). Regardless of their job title or where they work, they must abide by Gannett's adherence policy, which as discussed above, forces employees to work "off-the-clock." Exs. 1–59, at ¶¶ 4–10.

Plaintiffs all followed the same adherence policy which necessitated that they work "off-the-clock" in order to maintain good adherence and not be subject to the negative consequences of having a poor adherence level. Because all Call-Center Employees were affected by the adherence policy in the same way and suffered the same harm from it (unpaid "off-the-clock" work) they have shown a factual nexus that binds Plaintiffs and the Putative Class Members together as victims of a particular policy. *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-041-TBR, 2019 WL 1576572, at *3 (W.D. Ky.

Page **11**

Apr. 11, 2019).

Moreover, Gannett monitored Plaintiffs and the Putative Class Members and knew (1) when they arrived at the building, (2) when they logged on to their computer and (3) when they were actively using the computer. *See* Exs. 1–59, at ¶ 11. This evidence of uniform "log-in" requirements, coupled with Gannett's ability to monitor all of Plaintiffs' activities, further supports conditional certification in this case. *See Burch v. Qwest Comm'n Int'l., Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007) (finding that a centralized monitoring capability coupled with the uniform log-in requirements were evidence weighing in favor of conditional certification of a nation-wide call center collective action).

As non-exempt Call-Center Employees, Plaintiffs and the Putative Class Members did not engage in any other type of work or service for Gannett. Additionally, as Call-Center Employees, Plaintiffs and the Putative Class Members are (and were) scheduled to work close to forty (40) hours each week. Exs. 1–59, at ¶ 12. Though Plaintiffs and the Putative Class Members' "off-the-clock" work was time worked in excess of forty hours each week, Plaintiffs and the Putative Class Members' were not paid time and a half for those hours spent starting up and logging into their computers, on Gannett's behalf. *See* Exs. 1–59, at ¶ 14.

## C.   Determining "Company-Wide" Conditional Certification

Plaintiffs have more than met the standard for this Court to conditionally certify a company-wide class. *Abner*, 2019 WL 1573201, at *9 (certifying a national class of hourly call center employees based on complaint and multiple declarations); *Lewis*, 789 F. Supp. 2d. at 868 (certifying a national class based on complaint and multiple declarations; *Cresenzo v. O-Tex Pumping, LLC*, No. 15-CV-2851, 2016 WL 3277226, at *4 (S.D. Ohio June 15, 2016) (granting motion for conditional certification nationwide where motion was supported by twenty-two declarations); *Jasper v. Home Health Connection, Inc.*, No. 2:16-CV-125, 2016 WL 3102226, at *3 (S.D. Ohio Feb. 26, 2015); *see also Monroe*, 815 F.3d at 1010–20 (addressing the purpose and process of collective actions at the decertification stage);

*Brotherton v. Advanced Oilfield Services, LLC*, Case No. 2:17-CV-00825-MRH, ECF No. 64 (W.D. Penn. June 21, 2017) (granting nationwide conditional certification where motion was supported by one plaintiff and one declaration). The broad geographic scope inherent in a nationwide class is not an impediment to conditional certification and courts do not require evidence from each complained of facility at this early notice stage.

In *Atkinson v. TeleTech Holdings, Inc.*, the district court conditionally certified a nation-wide class of several thousands of Customer Service Agents (CSA's) across the United States. *See* 2015 WL 853234 at *3. There, the plaintiffs alleged that CSAs were not paid for all hours worked. *See id.* at *1– 2. In support of the motion for conditional certification in *Atkinson*, Plaintiffs presented declarations by twelve current and former CSAs, in addition to the pleadings and briefings on file. *See id.* Here, Plaintiffs and the Putative Class Members are making nearly the exact same allegations—Gannett's company-wide policy created an environment in which Gannett's non-exempt call-center employees were required to perform work "off-the-clock" and without pay. *See id.* at p. 2–6. Not only have **fifty-nine (59)** Plaintiffs provided their sworn statements to that effect, but approximately **ninety-two (92)** current and former Gannett Call-Center Employees have opted-in to this lawsuit to recover their unpaid back wages. This evidence alone is more than sufficient to support a finding that Plaintiffs and the Putative Class Members are similarly situated.

**D.**     **Conditional Certification Is Appropriate for Each Defendant**

Additionally, Plaintiff believe that this Court should certify a class consisting of all Call-Center Employees who have worked for Gannett Co. Inc., GCOE, LLC ("GCOE"), Gannett Satellite Information Networks, LLC ("GSIN"), and/or any other subsidiary of Gannett Co., Inc. These entities are highly integrated organizations with overlapping controls that do not recognize any formal corporate division from one entity to the next. Further, the policy causing the harm to Plaintiffs is applied throughout the Gannett corporate structure to all non-exempt hourly Call-Center Employees.

This Court is well within its power to conditionally certify a class where employees across corporate entities suffer the same harm from the same policy. *Fairfax v. Hogan Transportation Equip., Inc.*, No. 2:16-CV-680, 2017 WL 4349035, at. *7 (S.D. Ohio Sept.29, 2017) (conditionally certifying a class across all entities under the same corporate banner where plaintiffs were unsure of which specific entity employed them but where plaintiffs showed the same injury caused by a common policy); *see also Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 887.

There is little, if any, distinction between the Gannett entities. All Call-Center Employees reported that they did not even know there was a company called GCOE. Exs. 56–50, at ¶ 15. They only serviced Gannett customers. Exs. 56–59, at ¶ 16. They all had Gannett ID badges to enter the Gannett building they worked in, they were all a part of the Gannett Healthcare plan, and participated in the Gannett savings plan. Exs. 56–59, at ¶ 17. Gannett would advertise jobs from different Gannett entities by sending them via email to employees in "separate" Gannett entities, and advertise these jobs on its main homepage, Gannett.com. *See* Email from a Manager in Gannett Consumer Solutions Center ("CSC"), to an unknown number of employees, including a chat/email supervisor in Gannett Co., Inc. who forwarded it to a GCOE employee (Ex. 60). Further it appears from emails that the Adherence policy, requiring employees to be at their workstation logged in and ready to go is a policy that extends across organizations. *See* Email from CSC Manager to GCOE employees (Ex. 61). Because Gannett's adherence policy extends across its various entities, and because these entities are highly integrated, this Court should certify a class of Call-Center Employees across the whole of Gannett Co., Inc. including its various subsidiaries to facilitate the broad remedial purposes of the FLSA. The harm is caused by this centralized corporate-entity spanning policy and injures all Call-Center Employees, and the evidence in each case for each entity will be nearly the same. Should it appear later, after discovery, that the policies of each entity are different then Gannett can move this Court to decertify the class.

In the instant case, Plaintiffs' Declarations are strong evidence that the company policy discussed above was consistently applied and enforced in each state where Gannett operates. Based on this evidence, it is clear that regardless of location or differences in job duties or job titles, all hourly-paid Call-Center Employees were subject to the same corporate policy and procedure imposed by Gannett and were subject to the same time keeping system. Accordingly, company-wide notice to is warranted, as the Plaintiffs who suffered from the same FLSA-violating policies adequately represent the interests of the Putative Class Members. *See Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 772 (N.D. Ohio 2015).

**E.  When Deciding Motions for Conditional Certification, Courts in the Sixth Circuit Do Not Evaluate the Merits of the Claims or Individualized Defenses**

Courts need not evaluate the merits of a plaintiff's claims when making the determination of whether a group of similarly situated individuals exists. Although Gannett may argue that this Court cannot conditionally certify the proposed class due to individualized determinations, given the lenient standard of this stage, individualized issues do not preclude conditional certification. The Sixth Circuit has held that plaintiffs are similarly situated when they are unified by common theories of a defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct. *O'Brien*, 575 F. 3d at 585; *see also Hamric v. True North Holdings, Inc.*, Case No. 1:16-cv-01216, 2016 WL 3912482, at *1–2 (N.D. Ohio Jul. 20, 2016); *Shipes*, 2012 WL 995362, at *7 ("Once plaintiffs meet their burden at the notice stage, a defendant cannot overcome their showing by arguing that individual issues predominate.").

Indeed, Plaintiffs' request for conditional certification is in line with most courts' ruling when considering similar facts. *See, e.g.*, *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064 (M.D. Tenn. 2015) (certifying a class of employees asserting "off-the-clock" claims); *Monroe*, 860 F.3d. at 403 ("using more than one method to implement a company-wide work 'off-the-clock' policy does not prevent employees from being similarly situated"); *MPW*, 236 F.R.D. at 365–68, 370–74 (certifying a

class based on company-wide policy of failing to compensate employees for all hours worked); *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 586 (D. Kan. 2012) (granting conditional certification where plaintiffs alleged that defendant maintained unofficial policy of requiring off-the-clock work); *O'Brien,* 575 F.3d at 585; *Longcrier v. HL-A Co., Inc.* 595 F. Supp. 2d 1218 (S.D. Ala. 2008). Just as in those prior cases where courts certified a company-wide class where there was a company-wide policy that failed to compensate those plaintiffs for all hours worked, the Court here should also certify a company-wide class because Gannett has a uniform policy that fails to compensate its hourly-paid call center employees for all hours worked. *Bradford*, 137 F. Supp. 3d at 1064; *Monroe,* 860 F.3d. at 403; *MPW*, 236 F.R.D. at 365–68, 370–74; *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. at 586; *O'Brien,* 575 F.3d at 585 (holding that plaintiffs were similarly situated because they "articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets"); *Longcrier*, 595 F. Supp. 2d at 1218.

## F.      The Court Should Approve Plaintiffs' Proposed Notice and Process

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Butler v. DirectSAT USA, LLC*, 876 F. Supp.2d 560, 574–75 (D. Md. 2012). Plaintiffs request that the Court authorize sending of the attached Proposed Notice and Consent (Ex. 62) to all Putative Class Members, so as to provide them a meaningful opportunity to understand their rights and to join this litigation if they so choose. The Proposed Notice is "timely, accurate, and informative," and therefore should be approved. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

Gannett should be ordered to produce a list, in electronic and importable format, of all Putative Class Members, including their names, dates of employment, positions of employment, locations of employment, last-known mailing addresses, last-known telephone numbers, email

addresses, and the last four digits of their social security number. Courts throughout the Sixth Circuit (and the United States) routinely require defendants to produce this information when granting conditional certification motions. *See Atkinson*, 2015 WL 853234, at *5; *and Hoffman-La Roche*, 493 U.S. at 170 (holding that district courts have the authority to compel the production of contact information of employees for purposes of facilitating notice in FLSA collective actions); *see also Ross*, 2014 WL 2219236, *4 (ordering defendant to produce, in an electronic format, list of all workers meeting the job description for the last three years, including name, job title, address, telephone, email, dates and location of employment, and date of birth); *Jones-Turner v. Yellow Enters. Sys., LLC*, No. 3:07-cv-218-S, 2007 WL 3145980, at *3 (W.D. Ky. Oct. 25, 2007) (ordering defendant to produce list of current and former employees).

The Court should allow the notice to be sent to all Putative Class Members by email and text message as well as First Class Mail. Courts throughout the Sixth Circuit, including this Court, regularly allow simultaneous dual notice by ordinary mail and electronic mail to be sent to Putative Class Members in the interest of judicial economy. *See, e.g., Abner*, 2019 WL 1573201, at *7–8 (ordering notice be sent via email and first class mail, as well as approving of posting in call centers); *Fenley v. Wood Group Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016); *Ross*, 2014 WL 2219236, at *4 (ordering production of email addresses); *Pippins v. KPMG*, 2012 WL 19379, *14 (S.D.N.Y. Jan. 3, 2012) (ordering notice sent by email and finding that "given the reality of communications today…the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *and Kelly v. Bank of Am. N.A.,* 2011 WL 7718421, *1-2 (N.D. Ill. Sept. 23, 2011) (authorizing dissemination of notice via mail, email, and website posting). For the purposes of advancing the remedial objectives of the FLSA, "the current nationwide trend" appears to permit notice to be send via regular U.S. mail and email to all potential plaintiffs. *Atkinson*, 2015 WL 853234, at *5 (*citing Petty v. Russell Cellular, Inc.,* No. 2:13-cv-1110, 2014 WL 1308692, at *6 (S.D. Ohio Mar. 28,

2014)).

Plaintiffs request they be allowed to send the Court authorized notice via text-message as well. Plaintiffs propose sending a simple text message with a link to the full court authorized notice form. In today's modern society, cell phones are an integral part of everyday life and sending notice via text will ensure the largest number of putative class members are apprised of their rights. "This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication." *Nazih v. Café Istanbul of Columbus, LLC*, No. 2:17-CV-947, 2018 WL 4334613, at *6 (S.D. Ohio Sept. 11, 2018) (quoting *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 238972, at *8 (S.D. Ohio May. 25, 2018).

A reminder notice to be sent via electronic mail halfway through the 60-day notice period is also appropriate. Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights. *See Hamm v. Southern Ohio Medical Center*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017) ("Plaintiff is authorized to serve the Reminder through the same means it served the Notice: by first class mail to current employees and by first class mail and electronic mail to former employees.").[11]

Plaintiffs also propose that the Notice and Consent forms be posted in plain view at each of Gannett's call centers, nationwide. Courts in this District and throughout the Sixth Circuit have found that posting the court-approved notice at a defendant's job sites to be a proper (and effective) means of disseminating notice of FLSA collective actions. *Convergys Corp.*, 2019 WL 1573201, at *7; *Perry v.*

---

[11] *See also Benedict v. Hewlett-Packard Co.*, No. 13 Civ. 119, 2014 WL 587135, at *14 (N.D. Cal. Feb. 13, 2014) (approving reminder notice); *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (approving reminder notice); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (approving reminder postcard); *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466, at *5 (N.D. Cal. 2007) (ordering the mailing of a "reminder card" to all class members who did not submit a claim form 14 days before the end of the claims period); and *Watson, et al. v. Northland Heating & Air Conditioning Co., Inc.*, Case No. 2:17-cv-00447, Doc. No. 11, PAGE ID #65 (S.D. Ohio Sept. 14, 2017).

*Krieger Beard Servs., LLC*, No. 3:17-CV-161, 2018 WL 3218413, at *6 (S.D. Ohio July 2, 2018); *Conklin*, WL 3437564, at *6; *Edwards v. All-Dry, Inc.*, No. 3:17-CV-01313, 2018 WL 2973382, at *2 (M.D. Tenn. June 13, 2018).

## IV.   CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), enter an order:

(1)   Conditionally certifying the proposed collective FLSA Class as defined herein;

(2)   Implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claims are sent (via U.S. Mail, e-mail, and text-message) to:

**All hourly call-center employees who have been employed by Gannett Co. Inc., Gannett Satellite Information Network, LLC, GCOE, LLC, and/or any other subsidiary of Gannett Co., Inc. anywhere in the United States, at any time from September 3, 2016 through the final disposition of this matter. ("Putative Class Members").**

(3)   Approving a Reminder Email to be sent to the Putative Class Members halfway through the 60-day notice period; and

(4)   Requiring Defendants to, within fourteen (14) days of this Court's order, identify all Putative Class Members by providing a list in electronic and importable format, of the names, addresses, and e-mail addresses of all Putative Class Members who worked for Defendants during the Relevant Time Period.

Date:   September 3, 2019          Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:     /s/ Clif Alexander
        **Clif Alexander** (*Admitted Pro Hac Vice*)
        Texas Bar No. 24064805
        clif@a2xlaw.com
        **Austin W. Anderson** (*Admitted Pro Hac Vice*)
        Texas Bar No. 24045189
        austin@a2xlaw.com
        Texas Bar No. 24071993
        819 N. Upper Broadway
        Corpus Christi, Texas 78401
        Telephone: (361) 452-1279
        Facsimile: (361) 452-1284

        **BARKAN MEIZLISH HANDELMAN
        GOODIN DEROSE WENTZ, LLP**

By:     /s/ Robert E. DeRose
        **Robert E. DeRose** (*Admitted Pro Hac Vice*)
        bderose@barkanmeizlish.com
        **Jessica R. Doogan** (*Admitted Pro Hac Vice*)
        jdoogan@barkanmeizlish.com
        250 E. Broad St., 10th Floor
        Columbus, Ohio 43215
        Telephone: (614) 221-4221
        Fax: (614) 744-2300

        **THE LAWRENCE FIRM, PSC**

By:     /s/ Anne L. Gilday
        **Anne L. Gilday** (KY Bar No. 90126)
        Anne.gilday@lawrencefirm.com
        606 Philadelphia Street
        Covington, KY 41011
        Telephone: (859) 578-9130
        Fax: (859) 578-1032

        ***Attorneys in Charge for Plaintiffs and Putative Class
        Members***

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendants' counsel of record and Defendants are opposed to the relief requested in this Motion.

/s/ Clif Alexander
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Kentucky using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Clif Alexander
Clif Alexander