UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| GRACE HALL *et al.*, *individually and on behalf of those similarly situated*, | Plaintiffs, |
| v. | No. 3:19-cv-296-BJB-RSE |
| GANNETT CO. INC., GANNETT SATELLITE INFORMATION NETWORK, LLC, AND GCOE, LLC | Defendants. |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Two of Gannett's former call-center employees allege Gannett required them to boot up their computers, log into several programs, and read their emails while they were not on the clock. They sued Gannett, raising several claims under state and federal law. One invokes the "collective action" provision of the Fair Labor Standards Act. Under the FLSA, Congress authorized plaintiffs to sue "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).

One issue is before the Court at this early stage of the lawsuit: whether and how the Plaintiffs—through counsel who wish to represent a class of current and former call-center employees—may identify and notify a "conditional class" of similarly situated employees who may opt into this lawsuit. Even if others consent to join this lawsuit now, however, that does not mean they ultimately will be able to pursue their claims as a class; the law requires courts to conduct a more rigorous second certification analysis after discovery to determine whether the opt-in plaintiffs are in fact similarly situated. Because the pleadings and arguments raised thus far indicate putative class members are similarly situated with respect to Gannett's alleged adherence

1

policies, the Court **GRANTS** Plaintiffs' motion for conditional certification [DN 85] of a class of *all hourly call-center employees of Gannett Co. Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC subject to an adherence policy and employed after September 3, 2016.*

## I.     Requirements for conditionally certifying an FLSA collective action

Congress spoke sparingly about the contours of an FLSA collective action. 29 U.S.C. § 216(b) (emphasis added) states only that:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by *any one or more employees for and in behalf of himself or themselves and other employees similarly situated*. No employee shall be a party plaintiff to any such action *unless he gives his consent in writing* to become such a party and such consent is filed in the court in which such action is brought.

The Supreme Court spoke at much greater length regarding permissible collective-action procedures in *Hoffman–La Roche v. Sperling*, 493 U.S. 165 (1989) (applying § 216(b) to the ADEA's parallel collective-action proceeding). This approach offers "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* at 170. And "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.* These benefits, however, "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Courts therefore possess discretion "to manage the process of joining multiple parties in a manner that is orderly [and] sensible." *Id.*

Consistent with that "managerial responsibility," *id.* at 171, courts may "use [their] discretion to authorize notification of similarly situated employees," *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citing *Hoffmann–La Roche,* 493 U.S. at 169). But before

courts may authorize notice, they "must first consider whether plaintiffs"—based at this stage on the pleadings rather than proof—"have shown that the employees to be notified are, in fact, 'similarly situated.'" *Comer*, 454 F.3d at 546 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002)).

Courts assess whether plaintiffs are "similarly situated" according to a two-step process: "[t]he first takes places at the beginning of discovery," and "[t]he second occurs after 'all of the opt-in forms have been received and discovery has concluded." *Id.* (quoting *Goldman v. RadioShack Corp.*, No. 2:03–cv–32, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 17, 2003)). This pre-notice first step is known as the conditional-certification stage. *See id.*; *White v. Baptist Mem'l Health Care*, 699 F.3d 869, 877 (6th Cir. 2012). Here, at the beginning, the Court applies "a 'fairly lenient standard' that 'typically results in conditional certification of a representative class.'" *White*, 699 F.3d at 877 (quoting *Comer*, 454 F.3d at 547). Plaintiffs must make only "a modest factual showing" that their "position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 547. Conditional certification is primarily meant to effectuate "timely, accurate, and informative" notice to putative class members. *Hoffman–La Roche*, 493 U.S. at 172. The point is to inform potential members of the collective action at the outset; that way they can decide whether to join when the parties may efficiently examine the facts surrounding their employment and determine whether the plaintiffs are indeed "similarly situated."

But a Court's grant of conditional certification is "by no means final." *Comer*, 454 F.3d at 546. At the second stage, "after all class plaintiffs have decided whether to opt-in and discovery has concluded," *White*, 699 F.3d at 877, the parties will have the opportunity to prove whether some or all of the opt-in plaintiffs are similarly situated in their claims for relief. That is a factual determination, unlike the assessment the Court now makes based on mere allegations, attached

3

documents, and arguments of counsel. *See Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009) (resolution of "factual disputes" is reserved for "the second stage"). That second step will require the Court to "apply a 'stricter standard' and more closely examine" whether certification is warranted. *White*, 699 F.3d at 877 (quoting *Comer*, 454 F.3d at 547).

## II.   Plaintiffs' proposed collective-action definition

Plaintiffs ask this Court to certify a group of Gannett's hourly employees for notification and the opportunity to opt into this lawsuit. DN 82-1 at 10; 85 at 2. Plaintiffs' proposed class would include "all Call-Center employees who were employed by Gannett Co. Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC."[1] DN 82-1 at 10. The heart of their suit is an alleged company-wide "adherence policy." Gannett required, according to the complaint, all (or almost all) hourly employees to "start and log-in to their computer, open multiple different Gannett computer programs, log in to each Gannett program, read their emails, and ensure that each Gannett program is running correctly" before clocking in for their shifts. DN 82-1 at 9; DN 85 at 2 (asserting that Gannett's "adherence policy forces Plaintiffs and Putative Class Members to report to work early and perform their start up tasks … off-the-clock") (internal quotation marks omitted).

---

[1] This order refers to Defendants Gannett Co. Inc., Gannett Satellite Information Network, LLC, and GCOE, LLC collectively as Gannett. To the extent that Plaintiffs wish to expand the scope of the proposed class to include other Gannett subsidiaries, Plaintiffs should seek consent or leave to file a second amended complaint to conform their pleadings with their current arguments. *See* DN 85 at 2; *Herrera v. U.S. Serv. Indus.*, No. 2:12–cv–258, 2013 WL 1610414, at *2 (M.D. Fla. Apr. 15, 2015) (allowing a plaintiff to "file an amended complaint" where the proposed FLSA collective-action class did not match that described in the complaint).

At that time, Plaintiffs may raise any issues the parties have not already resolved regarding notice and a potentially expanded class. But at this juncture, the Court declines to authorize notice to individuals whom Plaintiffs have not identified in a well-pleaded complaint filed subject to Rule 11. *See Castillo v. P & R Enters.*, 517 F. Supp. 2d 440, 446 (D.D.C. 2007) ("Plaintiffs cannot in the instant motion expand the scope of the proposed class beyond that which is contained in their Complaint."); *Hubbard v. Gen. Dynamics Info. Tech., Inc.*, No. 2:18-CV-91, 2019 WL 2774332, at *7 (S.D. Miss. July 2, 2019) ("[P]roposed class must match the allegations in the complaint.").

4

At this stage, all the law requires of Plaintiffs is "a modest factual showing" that they and putative class members are similarly situated—that they are similarly affected by Gannett's alleged adherence policy or policies. *See Comer*, 454 F.3d at 546–47. Plaintiffs have attached numerous affidavits and emails from Gannett's managers that clear this low threshold. *See* DNs 85-1 through -61; *Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 105 (D.D.C. 2018) ("Once plaintiffs have met their burden, defendants may not thwart conditional certification merely by contradicting plaintiffs' claims, even if defendants provide 'voluminous documentation' purporting to show that no violations occurred." (quoting *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015))).

Under the precedents of the Sixth Circuit, Plaintiffs have carried their limited burden to justify conditionally approving a class of Gannett hourly call-center employees. At this stage, the Court conditionally certifies a class of *all hourly call-center employees of Gannett Co. Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC subject to an adherence policy and employed after September 3, 2016.*[2] *Cf. Stephens*, 291 F. Supp. 3d at 105 (district court may "certif[y] a class narrower than the one proposed").

Gannett's principal objection is that the adherence policy did not actually force Plaintiffs or putative class members to work off the clock; its policy allowed employees to clock in before start-up and log-ins without any adverse consequences related to discipline or promotion. DN 96 at 9, 11–12. Gannett does not contest the general applicability of the adherence policy—only that its applicability to different employees and locations make a classwide proceeding inappropriate.

---

[2] The parties may subsequently raise any arguments regarding the statute of limitations or tolling at an appropriate time, for example after the opt-in period has lapsed and counsel has had a chance to review the scope of the conditional class. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1078 (S.D. Ohio 2016) ("Without suggesting the likelihood of success of any subsequent motions for equitable tolling, the Court feels that the most prudent approach is to afford notice to [all] potential plaintiffs" before addressing timeliness issues.).

Any consequences of a policy violation, Gannett contends, are unlikely, or de minimis, or at least variable based on the activities and employees described in the complaint. *See id.* at 9, 11, 15 (employees need not fear being "out of adherence"). But taking issue with Plaintiffs' factual positions doesn't undermine the notion that the putative class members—all hourly employees subject to an adherence policy—are similarly situated *as Plaintiffs have pled their case*. *See Stephens*, 291 F. Supp. 3d at 105.

The conditional-certification stage is not the proper time for the Court to weigh arguments on the merits, or to determine whether the policy violates the FLSA. *See Ross v. Jack Rabbit Servs., LLC*, No. 3:14–CV–44, 2014 WL 2219236, at *3 (W.D. Ky. May 29, 2014) ("[A] rigorous inquiry into the merits of [a plaintiff's] claims is not necessary at this early juncture."); *see also Shipes v. Amurcon Corp.*, No. 1-14943, 2012 WL 995362, at *5 (E.D. Mich. Mar. 23, 2013) ("At this first stage, courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations.")

For the same reason, Gannett's arguments that the proposed class includes employees with job duties or titles that differ from those of the Lead Plaintiffs does not defeat conditional certification. Gannett contends that only Customer Care Representatives (CCRs)—not all hourly employees—"were subject to the CCR adherence policy." DN 96 at 11. And although Plaintiffs' papers are not entirely consistent on this point, the Court's current understanding is that Plaintiffs do not seek a class consisting solely of employees who perform a single task or who work subject to a single, authoritative CCR "Adherence Policy." Instead they ask to certify a class including all hourly employees *subject to some type of adherence policy* requiring employees to perform work-related tasks before clocking in. *See* DN 85 at 1–2, 7–12 ("the unpaid start-up policy extends far beyond one job title but instead affects all hourly Call-Center Employees universally and across

6

all of Gannett"). Again, the affidavits submitted by Plaintiffs provide evidence that employees other than the CCRs are subject to an adherence policy. *See* DNs 85-1 through 85-59. What's more, Gannett's submissions show the same thing. *See* DN 96-1 ("some outbound employees are subject to a type of adherence policy," though it may "differ from the policy applied to CCRs").

Gannett also points to differences in the conditions of employment that applied at different Gannett locations and subsidiaries. DN 96 at 5–8. But nothing in the record (so far) offers the Court a sound basis to exclude these subcategories of employees from the initial class receiving notice. While Gannett may ultimately show that these differences are material under the FLSA, it cannot cleave the class based only on its own unproven descriptions of its own workforce. That employees worked in different states under different employment agreements doesn't automatically defeat conditional certification. At least one district court within this circuit has conditionally certified a class spanning more offices in more states based on fewer declarations. *See Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 745–47 (M.D. Tenn. 2018) (certifying a company-wide class of 800 stores in 42 states based on 12 declarations). The Court therefore declines to construe the allegations as narrowly as Gannett urges. If differences between CCR and other employees' adherence policy consequences affect Gannett's liability under the FLSA, Gannett will have ample opportunity to show that as the case develops. At this stage, nothing distinguishes these subgroups in a manner indicating that some, but not others, should receive notice of the lawsuit and the chance to opt in.

To be sure, of the 59 declarations Plaintiffs provide, only "two isolated declarations [are] from non-CCRs," and only "two [are for] the numerous positions in the Call Centers." DN 96 at 16. But the precedents Gannett cites denied certification because plaintiffs' factual allegations were too insubstantial to support a class, not because proof supported some employees' claims

7

more directly than others. In both *Cason* and *Sanchez*, courts refused to conditionally certify a class based on a single declaration. *See Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381, at *3 (E.D. Mich. May 3, 2011); *Sanchez v. JMP Ventures, L.L.C.*, No. 13-cv-7264, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014). Here, Plaintiffs' 59 declarations—which are not limited to CCRs—consistently assert that Gannett's adherence policies required, or at least incentivized, them to work off the clock in violation of the FLSA. *See* DNs 85-1 through -59. At this stage Gannett offers no undisputed evidence or argument indicating that Plaintiffs' allegations—if proven true—would fail to establish a legal violation. That is enough to justify the conditional certification of similarly situated hourly employees. *See Waters v. Kryger Glass Co.*, No. 09-1003, 2011 WL 13290713, at *3 (W.D. Mo. Jan. 12, 2011) ("[C]onditional certification does not depend on the number of declarations alone, but whether the evidence submitted (including the declarations) is sufficient for plaintiffs to meet their burden.").

### III. Plaintiffs' proposed notice

Plaintiffs submitted a proposed notice that they would send to all members of the conditional class informing them of the lawsuit and how to participate. *See* DN 85-62. Gannett raised numerous objections to the proposed notice, several meritorious and several already tentatively resolved by the parties during a telephonic hearing. *See* DN 96 at 17–25. To be clear, this notice is not a communication by or of this Court. Rather, district courts authorize such communications by plaintiffs in order to ensure the proceedings that follow are fair and efficient. Courts do so mindful that the current "stage one" proceedings address only allegations, not proof. Thus the Court must be "scrupulous to respect judicial neutrality" in any communications that may bear on the merits at this initial stage. *Hoffman–La Roche*, 493 U.S. at 174. Ultimately, what

8

constitutes "timely, accurate, and informative" notice falls within the Court's discretion. *Id.* at 172.

### A. Content of the notice

As discussed during the hearing, the Court orders Plaintiffs to confer with Gannett and make several adjustments to the proposed notice in order to ensure it fairly describes the nature of the case and this communication. *First*, Plaintiffs must clarify the circumstances (if any) under which putative class members could be assessed any costs or fees from this litigation. *See* DN 85-62 at 4; *Creten–Miller v. Westlake Hardware, Inc.*, No. 08-2351, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) ("An award of costs to a prevailing defendant in an FLSA case is clearly possible and is not merely theoretical."); *Marcum v. Lakes Venture, LLC*, No. 3:19-cv-00231, 2020 WL 6887930, at *5 (W.D. Ky. Nov. 24, 2020) (providing information regarding who bears the costs of litigation "ensures [that] potential class members receive adequate notice allowing them to make an informed decision regarding this suit").

*Second*, Plaintiffs must remove the language providing for "automatic" individual representation of opt-in plaintiffs in the hypothetical event of a decertification. DN 85-62 at 6. The parties identified no reason the notice should address that subject now in the abstract, rather than in concrete terms after any decertification. (And counsel, to their credit, agreed they would confer and address the subject reasonably if and when needed).

*Third*, Gannett may provide a more robust statement regarding its position in the litigation. Before submitting a new proposed notice, the parties must agree to language that accurately and succinctly reflects Gannett's position in response to Plaintiffs' brief explanation of their claims. *See id.* at 3.

9

*Finally*, Plaintiffs should remove the statement that "the Court in charge of this lawsuit has ordered this Notice be sent." *Id.* at 2. This language could create an improper "appearance of judicial endorsement" of the lawsuit or potential opt-ins. *See Hoffmann–La Roche*, 493 U.S. at 174. "[T]he Court has authorized [Plaintiffs] to send this Notice," *see Ross*, 2014 WL 2219236, at *6, but the Court is not the one inviting potential plaintiffs into the case. *Accord Marcum*, 2020 WL 6887930, at *5.

### B. Methods of distribution

Plaintiffs may distribute the new notice (once submitted to the Court for approval) to putative class members via U.S. Mail and email. This is not particularly controversial. Because district courts routinely allow notice to be transmitted via U.S. mail and email, the Court will not restrict those methods. *See Hall v. U.S. Cargo and Courier Serv., LLC*, 299 F. Supp. 3d 888, 899 (S.D. Ohio 2018) (noting trend toward allowing the distribution of notice via both mail and email); *Abner v. Convergys Corp.*, No. 1:18-cv-442, 2019 WL 1573201, at *7 (S.D. Ohio Apr. 11, 2019) (collecting cases). Plaintiffs may also post the notice at Gannett's call centers, an additional source of notice to which Gannett offered no particular objection in the papers or during the hearing.

Plaintiffs also ask the Court for access to employee phone numbers so they can send text messages, and access to the last four digits of employee Social Security numbers so they track down putative class members whose notice might be returned as undeliverable. DN 98 at 10–11. The Court denies Plaintiffs' request: they offer no specific showing that the other three modes of communication are insufficient, and this additional information is more private and sensitive than the rest. *See Cowan v. Nationwide Mutual Ins.*, No. 2:19-cv-1225, 2019 WL 4667497, at *12 (S.D. Ohio Sept. 25, 2019) (where Plaintiffs may provide notice via U.S. Mail and email, a "request for telephone numbers and social security numbers is duplicative and unnecessarily intrusive to the

privacy rights" of the putative class members); *Hardesty v. Kroger Co.*, No 1:16-cv-298, 2016 WL 3906236, at *3 (S.D. Ohio July 19, 2016) (noting "hesitan[cy] to order the production of telephone numbers and social security numbers in order to facilitate notice to the class"). If Plaintiffs experience significant issues reaching putative class members via U.S. Mail and email, they may always work with Gannett to resolve any concerns and, if that proves unsuccessful, return to the Court for relief. *See generally Rogers v. Webstaurant, Inc.*, No. 4:18-CV-00074, 2019 WL 691408, at *2 (W.D. Ky. Feb. 19, 2019) (revisiting the notice period is disfavored and rare, but potentially available if "significant and severe circumstances so warrant").

Gannett also identifies a threshold concern with Plaintiffs' approach to notice: counsel at another law firm may have contacted some putative class members about this case via targeted Facebook ads that the Court hadn't authorized. DN 96 at 17–19. Plaintiffs' counsel, for their part, rejected any connection between this litigation and the law firm or communication at issue. Regardless, the FLSA imposes no absolute bar to pre-certification communication with putative class members, and any concern regarding such communication would likely emerge only if the "communications were misleading, coercive, or an improper attempt to undermine" the certification process. *Rogers v. Webstaurant Store, Inc.*, No. 4:18-cv-00074, 2018 WL 3058882, at *5 (W.D. Ky. June 20, 2018).

Apart from the restrictions imposed by state bar associations and ethics rules, the Court is unaware of any basis to restrict counsel from speaking with potential FLSA plaintiffs—and Gannett cites no such rules that might apply here. "Pre-certification communication with putative members of a collective action," therefore, "should be allowed unless the communication contradicts a court notice, is misleading or improper." *Cowan*, 2019 WL 4667497, at *3. "By monitoring preparation and distribution of the notice," of course, the Supreme Court has

11

recognized that "a court can ensure that it is timely, accurate, and informative." *Hoffman–La Roche*, 493 U.S. at 172. But experienced counsel are well positioned to address disputes about the content of the court-approved notice before it is distributed, and share a mutual interest in avoiding litigation over consents obtained in an allegedly improper manner.

The Facebook ad at issue here raise no such concerns. Its content is anodyne, rather than misleading: "In the last 3 years, have you worked as a customer service representative for a Gannett call center, anywhere in the United States? You may be entitled to extra compensation in the form of unpaid overtime, back wages, liquidated damages, attorney's fees and costs." DN 96-2 at 2, 4. That an ad may contain a one-sided view of the litigation does not make it an "improper attempt to undermine" the certification process. *Rogers*, 2018 WL 3058882, at *5. Therefore, the Court refuses to strike any plaintiffs whose consent may be attributable to this ad. Counsel should take care to ensure, however, that any such plaintiffs also receive the Court-approved notice to ensure that they receive a complete picture of the nature of this litigation.

### C. Length of notice period

The parties raise a small disagreement over the length of the notice period in which employees may opt in: Plaintiffs request 60 days, Gannett requests 45, and neither side points to binding authority on the question. Decisions in the Western District of Kentucky have described the standard notice period as 60 days. *See Marcum*, 2020 WL 6887930, at *5; *Green v. Platinum Rests. Mid-America, LLC*, No. 3:14–cv–439, 2015 WL 6454856, at *4 (W.D. Ky. Oct. 26, 2015). Because Gannett has presented no compelling reason to opt for a shorter period here, the Court approves a 60-day notice period.

### D. Reminder notice

The Court denies Plaintiffs' request to send a reminder notice, DN 85 at 18, because that step may prove "unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (quoting *Witteman v. Wis. Bell, Inc.*, No. 09–cv–440, 2010 WL 446033, at *3 (W.D. Wis. 2010)); *Abner*, 2019 WL 1573201, at *7 ("courts should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims.") (alteration adopted) (quoting *Hardesty*, 2016 WL 3906236, at *2). Because "the purpose of notice is simply to inform potential class members of their rights[,] [o]nce they receive that information, it is their responsibility to act as they see fit." *Wlotkowski*, 267 F.R.D. at 220 (alteration adopted) (quoting *Witteman*, 2010 WL 446033, at *3).

\* \* \* \* \*

Gannett should provide Plaintiffs with the contact information and access necessary to effectuate this Order within 14 days of the Court's approval of a revised notice. And given the heightened importance of information security and privacy in the digital age, the Court reminds counsel on both sides to treat any and all personal information regarding as-yet-unrepresented non-parties with utmost care and sensitivity. *See Ross*, 2014 WL 2219236, at *4.

### CONCLUSION

The Court **ORDERS** that:

1. Plaintiffs' Motion for Conditional Certification [DN 85] is **GRANTED**.
2. The parties confer regarding a mutually agreeable notice consistent with this Order and jointly submit a revised proposed notice on or before February 12, 2021.