**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| NICOLE LOVE,<br>Individually and on<br>behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>GANNETT CO. INC., GANNETT<br>SATELLITE INFORMATION NETWORK,<br>LLC, and GCOE, LLC<br><br>                Defendants. | Case No. 3:19-cv-00296-BJB-RSE<br><br>COLLECTIVE ACTION PURSUANT<br>TO 29 U.S.C. § 216(B) |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE**

Named Plaintiff Nicole Love ("Named Plaintiff Love") files this Unopposed Motion for Settlement Approval and Dismissal with Prejudice ("Motion") seeking the Court's approval of the Settlement, specifically, the Settlement Agreement, attached hereto as Exhibit 1, along with all exhibits thereto: Exhibit A (List of Individuals Who Filed Opt-in Consent Forms); Exhibit B (Settlement Notice); and Exhibit C (Opt-In Form). Defendants Gannett Co., Inc., Gannett Satellite Information Network, LLC and GCOE, LLC ("Defendants") do not oppose this Motion. Plaintiff respectfully submits that the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute and satisfies the criteria for approval under § 216(b) of the FLSA.

**I.      BACKGROUND INFORMATION**

      **A.      PROCEDURAL BACKGROUND**

Plaintiff Grace Hall initially filed this Lawsuit on January 21, 2019, in the United States District Court for the District of Arizona, alleging that Defendants failed to pay hourly call center employees

1

for alleged "off-the-clock" time in violation of the Fair Labor Standards Act ("FLSA").[1] On April 15, 2019, the Parties transferred this action to the United States District Court for the Western District of Kentucky, Louisville Division. Defendants have at all times denied the material allegations contained in the complaints before this Court and assert that Plaintiff and the Putative Class Members were always paid according to federal and state law. *See* ECF Nos. 21, 93.

After unsuccessfully mediating this matter in July of 2019, Plaintiff filed for conditional certification of an FLSA collective action on September 3, 2019, and this Court conditionally certified a collective action consisting of "all hourly call-center employees of Gannett Co., Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC subject to an adherence policy and employed after September 3, 2016." ECF No. 123, p.2. To date, ninety-five (95) individuals have filed a consent to join the Lawsuit.[2]

The Parties conferred and agreed to participate in a second mediation to explore informal resolution on behalf of the defined collective. To that end, Defendants provided additional data to Plaintiff's counsel to allow them to put together an updated detailed damage model and ensure a meaningful mediation. On April 28, 2021, the Parties mediated this matter, in person, with respected wage and hour mediator, Dennis Clifford. Although the Parties did not finalize a settlement agreement during the mediation, Mediator Clifford circulated a mediator's proposal the Parties subsequently agreed to.

---

[1] Plaintiff Grace Hall was removed as the Named Plaintiff and Nicole Love and Darren Brasher were subsequently included as Named Plaintiffs via the First Amended Class/Collective Action Complaint. See ECF No. 89. Through the Second Amended Collective Action Complaint, Plaintiff seeks to remove Darren Brasher as a Named Plaintiff. *See* ECF No. 132-1.

[2] The Court-authorized notice has not yet been disseminated to the Putative Class Members, instead, the Parties seek to send a Settlement Notice to the Putative Class Members providing them with an opportunity to opt-in to this action and obtain their settlement proceeds.

### B.   THE SETTLEMENT TERMS

If approved by the Court, the Settlement will include Named Plaintiff Love, the Opt-In Plaintiffs identified in Exhibit A to the Settlement Agreement, and the FLSA Collective Members who timely return a Claim Form and Release Agreement (collectively "Participating FLSA Collective Members"). *See* Exhibit 1, ¶ II.B.

The total gross settlement amount ("Settlement Amount") is Six Hundred and Fifty Thousand Dollars ($650,000.00), which is inclusive of: (a) all of the individual settlement payments to Plaintiff, Opt-In Plaintiffs, and Participating FLSA Collective Members; (b) Named Plaintiff Love's service award as approved by the Court; (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court; and (d) the fees and costs associated with settlement administration as approved by the Court. *See id.*, ¶ IV.E.[3]

The amount remaining will constitute the Net Settlement Fund, and will be divided amongst the Participating FLSA Collective Members, on a *pro rata basis*, to provide the individual settlement amounts applicable to each member of the collective. *See id.*, ¶ IV.E(7). Each FLSA Collective Member (including Plaintiff and Opt-In Plaintiffs) will be assigned a specific settlement amount based on the number of weeks he or she worked for Defendants during the Collective Period.  The Pro-Rata Amount is to be calculated by dividing the number of weeks each FLSA Collective Member worked for Defendants during the Collective Period by the total number of such weeks for the entire FLSA Collective, and then multiplying that percentage by the amount of the Net Settlement Fund. *Id.*

In exchange for these payments and other consideration provided for in the Settlement Agreement, the Lawsuit will be dismissed with prejudice. Named Plaintiff Love, by executing the

---

[3] Not included in the Gross Settlement Amount is Defendants' share of applicable payroll taxes. *See* Ex. 1, ¶ IV.E(1).

3

Settlement Agreement, has agreed to a general release of her claims against Defendants. *See id.*, ¶ IV.D(2). Moreover, by timely returning a complete Opt-in Form and Release Agreement, each Participating FLSA Collective Member agrees to release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in this action, including under the Fair Labor Standards Act ("FLSA"), under the theories of *quantum meruit*, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, and all claims for costs, attorneys' fees and/or interest, or any other benefits against Defendants (collectively, "Released Collective Claims"). *Id.*, ¶ IV.D(1).

## II.    SETTLEMENT APPROVAL IS WARRANTED

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. *See O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-02378, 2020 WL 4493157 at *6 (W.D. Tenn. Aug. 4, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "[T]he Court's role in this situation is in many ways comparable to, but in others quite distinguishable from that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23, and derives from the special character of the substantive labor rights involved." *Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *1 (W.D. Ky. Apr. 29, 2020) (quoting *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008)). Specifically, the Court must determine whether "the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* No. 3:13-cv-1582, 2015 WL 1119732, at *2 (N.D.

Ohio March 11, 2015). As shown in the attached Declarations of Clif Alexander and Robert E. DeRose, Court approval is warranted. *See* Exhibits 2 and 3.

### A. A *BONA FIDE* DISPUTE EXISTED BETWEEN THE PARTIES

In approving a settlement of FLSA claims, "[f]irst, the Court must determine whether there is a *bona fide* dispute between the parties. *Burnham*, 2020 WL 2065793, at *1. "The FLSA creates a statutory entitlement that employers and employees generally may not agree to pay or receive less than what the statute provides for." *Id.* (quoting *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016)). "Without a bona fide dispute, no settlement could be fair and reasonable. Thus, some doubt must exist that Plaintiffs would succeed on the merits through litigation of their claims." *Id.* (quoting *Collins*, 586 F. Supp. 2d at 719–20).

A *bona fide* dispute between the Parties clearly existed in this matter. Named Plaintiff Love alleges that she and other similarly-situated non-exempt service center employees were required by Defendants to perform unpaid work off-the-clock to be "call ready" at the start of their shifts including, but not limited to: (a) logging into computers; (b) opening computer programs; (c) signing into computer programs; and (d) ensuring programs are running correctly. Defendants deny that they engaged in any unlawful or improper conduct, including, expressly, all off-the-clock work claims of Plaintiff, and deny all liability and damages of any kind to anyone regarding Plaintiff's claims. Alternatively, Defendants have maintained that *if* any time was spent on work while off the clock, that amount would be *de minimus* under the FLSA.

The Parties also dispute whether collective treatment of Plaintiff's FLSA claims is appropriate. Plaintiff filed a Motion for Conditional Certification, which was strongly opposed by Defendants. Defendants continue to deny that the Lawsuit could be litigated on a collective action basis. Absent settlement, Defendants would file a motion for decertification of the conditionally certified class.

5

### B. THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE.

"The need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford*, 2008 WL 4724499, at *3. The Sixth Circuit uses seven factors to evaluate the fairness of FLSA settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3; *see also Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010). The proposed Settlement satisfies each factor.

#### 1. There is no risk of fraud or collusion.

"The first factor the Court must consider in determining whether the settlement is fair and reasonable is the risk of fraud or collusion." *Burnha*m, 2020 WL 2065793, at *2. "In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Id.* (quoting *Ross*, 2016 WL 7320890, at *3).

This action was filed almost two years ago. Since then, the parties have engaged in formal and informal discovery, including the production and analysis of payroll documents, and motion practice. The Parties also mediated this matter, twice.

The instant Settlement was fairly and honestly negotiated. Plaintiff's counsel and Defendants' counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked. *See* Exhibit 2, ¶¶ 4–19; Exhibit 3, ¶¶ 3, 7–9. The Settlement Agreement was achieved only after arm's-length and good faith negotiations between the Parties, occurring after motion practice, formal discovery—including the deposition of Named Plaintiff Love—the production of workweek,

timekeeping, and payroll data for the Plaintiff, and counsel for the parties vigorously arguing their differing positions. *See* Exhibit 2, ¶ 20; Exhibit 3, ¶¶ 17–18. Importantly, the Parties only reached the Settlement Agreement before this Court after engaging in arm's-length negotiations with a well-respected wage and hour mediator through formal mediation.

There is no evidence of fraud or collusion and the settlement agreement was the result of arm's length, good-faith negotiations. Accordingly, this factor weighs in favor of finding the settlement fair and reasonable.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

"[T]he Court must also weigh the risks, expense and delay Plaintiffs would face if they continued to prosecute the litigation through trial and appeal." *Ross*, 2016 WL 7320890, at *3. Employment cases in general, and specifically wage-and-hour cases with hundreds of plaintiffs, are expensive and time-consuming. Here, the Parties disagree about the merits of Plaintiff's claims and the viability of Defendants' various defenses yet recognize that achieving a final result through litigation and potential appeal processes would require substantial additional risk, time and expense. If forced to litigate this case further, the parties will incur substantial expenses and fees in continuing discovery, including taking depositions of both Collective Members, as well as) deposition(s) of Defendants, including Rule 30(b)(6) depositions, manager/supervisor depositions, and declarations of Defendants' trainers and Human Resources ("HR") professionals. *See* Exhibit 3 at ¶ 19. Moreover, the parties would incur substantial fees in further motion practice, including dispositive motions, a decertification motion, and an anticipated Rule 23 Motion for Class Certification. *See id.* Accordingly, the policy favoring the settlement of wage and hour actions and other complex cases applies with particular force here. *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates

7

worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs).

In view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, the Settlement is in the best interests of the FLSA Collective Members as it provides them substantial relief, promptly and efficiently, and augments the benefits of that relief through the economies of collective resolution. *See* Exhibit 2, ¶ 21; Exhibit 3; ¶ 20.

### 3. The Parties have engaged in substantial investigation.

The parties have engaged in substantial investigation prior to and during the settlement negotiations, and the issues are well understood by both sides. Exhibit 2, ¶ 20; Exhibit 3, ¶¶ 16–18. Relevant information was provided to Plaintiff's counsel, including policies and workweek information, timekeeping and payroll data. *See* Exhibit 2, ¶ 20. Named Plaintiff Love also responded to Defendants' written discovery and provided deposition testimony in support of her claims. *See id.* The legal issues in the case were thoroughly researched and argued by counsel for the parties. *See id.* All of aspects of the dispute are well-understood by both sides. *See id.*

### 4. There is no guarantee of success on the merits.

"The Court must 'weigh[ ] the plaintiff[s'] likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Ross,* 2016 WL 7320890, at *3 Here, both Parties recognize and have considered the inherent risks in bringing the matter to trial. Indeed, Plaintiff and the FLSA Collective Members will be required to prove that Defendants' policies and practices violated the FLSA and present evidence regarding each Plaintiff's specific damages. The risks of going to trial "should be weighed against the relief provided for in the settlement agreement. *Id.* at *4. The parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk. *See* Exhibit 2, ¶ 21;

8

Exhibit 3, ¶ 19. For their part, Defendants deny that they engaged in any unlawful or improper conduct including, expressly, all off-the-clock work claims of Plaintiff and the FLSA Collective Members; deny all liability and damages of any kind to anyone regarding Plaintiff's claims; and deny that this case could be litigated on a collective action basis. There is no guarantee that Plaintiff will prevail on Defendants' anticipated motion to decertify the conditionally certified class or Defendants' anticipated motion(s) for summary judgment. *See* Exhibit 3, ¶ 19. If the case proceeded to trial, Defendants raise affirmative defenses to Plaintiff's claims, and the outcome of those defenses at trial is uncertain as well. *See id.* Continued litigation would thus present risk for both Parties and could result in appeals. *See* Exhibit 2, ¶ 20; Exhibit 3, ¶ 19.

Here, Participating FLSA Collective Members will receive significant monetary compensation without running the risk of a loss on the merits. While the final calculations will be performed by the Settlement Administrator, subject to Court approval, each Plaintiff would receive an estimated average[4] individual settlement payment of $254.60. Moreover, Plaintiff's counsel is satisfied that this Agreement is in the best interest of the Collective. *See* Exhibit 2, ¶ 21; Exhibit 3, ¶ 20. Therefore, this factor weighs in favor of finding the settlement fair and reasonable.

### 5. Counsel and Named Plaintiff Love Support the Settlement and There Are No Absent Members.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Ross*, 2016 WL 7320890, at *4 (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *6). In this case, Plaintiff's counsel can confidently

---

[4] The "average" does not take into account the calculations that will be performed to determine each collective member's *pro rata* share of the Net Settlement Fund. Those individuals who worked the longest during the Collective Period will receive a larger portion of the Net Settlement Fund than those who worked for shorter periods during the Collective Period.

represent that they are satisfied that the terms and conditions are fair, reasonable, and adequate, and Plaintiff's counsel is satisfied that this Agreement is in the best interest of the Collective. *See* Ex. 2, ¶ 21; Exhibit 3, ¶ 20. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Plaintiff's counsel supports the Settlement. This factor weighs heavily in favor of finding the settlement fair and reasonable. *See Ross*, 2016 WL 7320890, at *4

Likewise, Plaintiff Love supports the Settlement and there are no absent class members. *See* Exhibit 2; ¶ 27; Exhibit 3, ¶ 20. Because "[t]here is no opt-out mechanism in FLSA actions as there are with class actions under Federal Rule of Civil Procedure Rule 23[,]" the objections of absent class members are not as important. *See id.* This is because absent collective members will not be bound by the terms of the Settlement Agreement upon approval, instead they will receive their Notice of Settlement and have the opportunity to choose whether or not to return their Claim Form and participate in the settlement. Thus, this factor weighs in favor of finding the settlement fair and reasonable.

### 5. The Settlement Promotes the Public Interest.

The final consideration—whether the settlement promotes public interest—also supports approval of the Settlement.

> Courts have held that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). At the same time, courts have also found that the enforcing the FLSA furthers an important interest in "encouraging employees and others to ensure that employers comply with laws governing employment." *Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 871 (E.D. Tenn. 2013).

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019). Likewise, as noted in *Crawford*, "[i]f the settlement reflects a reasonable compromise over issues actually disputed, . . . such as back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'" *Crawford*, 2008 WL 4724499 at \*9 (quoting *Lynn's FoodStores, Inc.*, 679 F.2d at 1353). Such is the case here.

## C. THE SETTLEMENT DISTRIBUTIONS ARE FAIR, REASONABLE AND ADEQUATE

"As a part of its exacting and thorough examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 WL 4724499, at \*9. "The need for equity in distributions of proceeds is no less in a collective-action settlement." *Id.* "Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be fair, reasonable, and adequate." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 628 (6th Cir. 2007).

The benefit that Participating Collective Members will receive from their individual settlement payments as compared to the unknown maximum they potentially *could* have received if they had prevailed at trial is fair and reasonable, especially given the defenses raised by Defendants and the risks faced if this litigation were to proceed to trial. *See* Exhibit 2, ¶ 21. Here, even if Plaintiff and the FLSA Collective Members succeeded on the merits of their claims, the amount of recovery is highly uncertain and something upon which the Parties continue to disagree. In particular, the parties significantly disagree as to the amount of time log-on activities require, whether Plaintiff and the FLSA Collective Members have been compensated for that time, whether such time is compensable or *de minimis* under the FLSA, and whether a three-year or two-year statute of limitations and liquidated damages would apply in this case. *See Crawford*, 2008 WL 4724499 at \*7 (approving settlement for

over 300 class members where potential recovery difficult to ascertain due to potential defenses, including de minimis argument).

In this case, the settlement proceeds shall be distributed to the Participating FLSA Collective Members on a *pro rata* basis according to an equitable formula determined by class counsel. The formula will take into account: (1) the combined total number of weeks worked by all of the FLSA Collective Members; and (2) the total number of weeks worked for each individual participant. This result ensures that the Net Settlement Amount is distributed fairly to the FLSA Collective Members, depending on their tenure with the company. The proposed allocation of settlement proceeds is fair, reasonable, and adequate as it apportions funds based on the circumstances of each collective member's employment by Defendants. *See Burnham*, 2020 WL 2065793, at *4.

### D. THE REQUESTED SERVICE AWARD TO NAMED PLAINTIFF LOVE SHOULD BE APPROVED

The Settlement contemplates providing a $5,000.00 service award to Named Plaintiff Love. "Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Ross*, 2016 WL 7320890, at *5 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010)). As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990), "[n]umerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent." 130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). Courts also recognize

that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (noting that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Named Plaintiff Love contributed to the ultimate success of this lawsuit. She was willing to serve as the representative plaintiff and include her name prominently on the style of the case. As the representative Plaintiff, Plaintiff Love engaged in lengthy conversations with her counsel describing—in great detail—Defendants' time-keeping and phone systems, and was deposed by Defendants. *See* Exhibit 2, ¶ 20. Finally, Plaintiff Love voluntarily entered into a general release as a condition of the settlement as opposed to the limited release applicable to the opt-in Plaintiffs. *See* Exhibit 1, at ¶ IV.D(2). Accordingly, Plaintiff Love helped facilitate the successful resolution of this matter and her time and efforts support the requested service payment. *See* Exhibit 2, ¶ 27; Exhibit 3, ¶ 21.

### III. PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND LITIGATION COSTS ARE REASONABLE AND SHOULD BE APPROVED

After the Court has confirmed that the terms of settlement are fair to Plaintiff and the FLSA Collective Members, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's counsel. The Agreement reflects Defendants' agreement to pay Plaintiff's Counsel forty percent (40%) of the settlement amount, inclusive of reasonable fees and costs incurred in the litigation. *See* Exhibit 1, ¶ IV.E(2).

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875

13

(1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The purpose of fee shifting statutes "is to induce a capable attorney to take on litigation that may not otherwise be economically viable." *Gascho, et al. v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 280 (6th. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (explaining that a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case")).The standard for reviewing a request for attorney's fees is reasonableness, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 249 (S.D. Ohio 1991), and there is no specific numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. *See Fegley*, 19 F.3d at 1134-43 (recognizing that an FLSA fee award "encourages the vindication of congressionally identified policies and rights").

There are two basic measures for evaluating the fairness of an attorney's award under the FLSA—"work done and results achieved." *Rui He v. Rom*, 751 Fed. App'x. 664, 673 (6th Cir. 2018) (quoting *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation. *Id.* at 279. The Sixth Circuit permits a court to choose the one or the other method as the court, in its discretion, deems appropriate for the circumstances of a particular case so long as the court articulates its reasons. *See Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516).

"When determining whether a certain fee request is reasonable, the Court considers a myriad of factors that are all within the Court's knowledge." *Hebert*, 2019 WL 4574509, at *4 (citing *Minor v. Twin Rivers Constr. Inc.*, No. 2:16-cv-1002, 2017 WL 6372626, at *1–2 (S.D. Ohio Nov. 20, 2017). Those factors include:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Id.* Plaintiff will address each factor in turn.

### i. The Value of the Benefit Rendered to the Plaintiff Class

Plaintiff and FLSA Collective Members are entitled to a substantial recovery on their claims. Indeed, on average they will receive approximately $254.00 in damages, based on their number of weeks worked for Defendants within the Collective Period.

### ii. The Value of the Services on an Hourly Basis

Plaintiff's Counsel expended over 601.3 hours in the prosecution of Plaintiff's and the FLSA Collective's claims. *See* Exhibit 2; ¶ 22 (583.6 hours billed); Exhibit 3, ¶ 5 (17.7 hours billed). As discussed in greater detail below, the applicable lodestar amount in this case is $245,927.70. *See* Exhibit 2; ¶ 22; Exhibit 3; ¶5. The litigation expenses incurred total $17,324.27. *See* Exhibit 2; ¶ 24 ($11,675.77 in expenses); Exhibit 3; ¶ 15 ($5,648.50 in expenses). The fees, together with the litigation expenses, totals $263,251.97, an amount higher than the requested fee award. *See* Exhibit 2, at ¶¶ 22, 24; Exhibit 3, ¶¶ 5, 15.

### iii. Whether the Services Were Undertaken on a Contingent Fee Basis

Plaintiff's Counsel took this case on a contingent basis and took the risk of non-payment for their work if there was no recovery for the Plaintiff and the FLSA Collective Members. *See* Exhibit 2, ¶ 26; Exhibit 3, ¶ 14. Courts generally look with favor upon Plaintiff's Counsels' request for an attorney

15

fee award when they undertake the case on a contingency basis and "absorb[] the risk of an unsuccessful outcome and no fee of any kind." *Hebert*, 2019 WL 4574509, at *4 (*citing Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *30). Plaintiff's counsel did undertake this case on a contingent-fee basis. The representation agreement between Plaintiff Love and her counsel provides for a 40% fee in the event Plaintiff is successful on her claims. Importantly, the representation agreement further provides that Plaintiff Love bore no risk of loss in the event she was unsuccessful. Plaintiff's counsel was solely responsible for all costs and expenses in this matter with no certainty of recovery. *See* Exhibit 2, ¶ 26.

### iv. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain Incentive to Others

This factor favors approval because "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases" recognizes the importance of an employee's ability to find counsel to litigate their claims, although they may be individually small. *C.f. Hebert*, 2019 WL 4574509, at *5.

### v. The Complexity of the Litigation

"FLSA collective and class matters are inherently complex[.]" *Id.* This case is no different. As indicated by the docket sheet, the Parties engaged in substantial briefing preceding the settlement before this Court.[5]

### vi. The Professional Skill and Standing of Counsel on Both Sides

Experienced counsel, specialized in wage and hour litigation, represented the Parties on each side of the docket. Indeed, Plaintiff's Counsel have represented hundreds of thousands of call-center employees in collective and class action wage and hour litigation since 2016. *See* Exhibit 2, ¶ 19; Exhibit 3; ¶¶ 8–10. As such, Plaintiff's Counsel is familiar not only with this complex area of the law, but that also with these claims in the call center industry, and specifically in this case. The skill and experience

---

[5] This factor has also been addressed at length, *supra* § A.2.

16

of Plaintiff's Counsel is further addressed in the Declarations provided by Clif Alexander and Robert E. DeRose. *See* Exhibit 2, ¶¶ 4–19; Exhibit 3, ¶¶ 6–10.

### 1. Plaintiff's Attorneys' Fees Are Reasonable Pursuant to the Percentage of the Fund Method.

Plaintiff's Counsel contend that the "percentage of the fund" method is appropriate in this case. Courts readily approve the "percentage of the fund" method. *Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (citing *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09–CV–1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees)). Here, Plaintiff's counsel obtained a substantial damage award based on the facts of the case and despite Defendants' arguments that Plaintiff was not entitled to any recovery, at all. *C.f., Osman*, 2018 WL 2095172, at *3.

Plaintiff's Counsel seeks to have its 40% contingency fee granted to cover the work performed to achieve the great result for the Plaintiff and for litigation expenses and these facts warrant approval of the requested amount of $260,000.00 for fees and expenses.

### 2. The Lodestar Cross-Check Confirms Reasonableness of Requested Fee

Applying the lodestar cross-check, Plaintiff's Counsel have expended 601.3 hours in the prosecution of this matter and, applying their applicable hour rates, have a lodestar amount of $245,927.70. *See* Exhibit 2, at ¶ 22; Exhibit C, at ¶ 5. All of the hours expended were reasonable and necessary, and aided in obtaining the settlement before this Court. *See id.* Moreover, and as explained in more detail in the attached declarations, the hourly rates requested by counsel are reasonable and have been previously approved in wage and hour cases across the United States. *See* Exhibit 2, at ¶ 20 and n.1; Exhibit 3, at ¶ 11. Together with fees and expenses, Plaintiffs total expenditure in this matter is 263,251.97, an amount $3,251.97 higher than the amount requested for fees and expenses in this matter.

Because the lodestar cross-check confirms the reasonableness of the requested percentage of the fund amount of forty percent (40%), Plaintiff asks this Court to approve the requested fee amount as fair and reasonable.

## III. CONCLUSION

For the reasons addressed above, Plaintiff respectfully request that this Court approve the Settlement, along with each of its exhibits, and dismiss this action with prejudice.

Date: June 4, 2021	Respectfully submitted,

                              **ANDERSON ALEXANDER, PLLC**

By:    /s/ *Clif Alexander*
         **Clif Alexander** *(Admitted Pro Hac Vice)*
         Texas Bar No. 24064805
         clif@a2xlaw.com
         **Austin Anderson** *(Admitted Pro Hac Vice)*
         Texas Bar No. 24045189
         austin@a2xlaw.com
         **Lauren Braddy** (*Admitted Pro Hac Vice*)
         Texas Bar No. 24071993
         lauren@a2xlaw.com
         ANDERSON ALEXANDER, PLLC
         819 N. Upper Broadway
         Corpus Christi, Texas 78401
         Telephone: (361) 452-1279
         Facsimile: (361) 452-1284

         **BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFER, LLP**

By:    /s/ *Robert E. DeRose*
         **Robert E. DeRose** *(Admitted Pro Hac Vice)*
         Ohio Bar No. 00055214
         bderose@barkanmeizlish.com
         4200 Regent Street, Suite 210
         Columbus, OH 43219
         Telephone: (614) 221-4221
         Fax: (614) 832-5297

         **THE LAWRENCE FIRM, PSC**

By:    /s/ *Anne L. Gilday*
         Anne L. Gilday (KY Bar ID: 90126)
         606 Philadelphia Street
         Covington, KY 41011
         Telephone: 859-578-9130
         Fax: 859-578-1032
         anne.gilday@lawrencefirm.com

         *Attorneys in Charge for Plaintiff and Putative Class Members*

Case 3:19-cv-00296-BJB-RSE   Document 136   Filed 06/04/21   Page 20 of 20 PageID #: 1006

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel conferred with Defendants' counsel, and they are not opposed to this motion.

/s/ *Lauren Braddy*
Lauren Braddy

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Kentucky, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander