**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| NICOLE LOVE,<br>Individually and on<br>behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GANNETT CO., INC., GANNETT<br>SATELLITE INFORMATION NETWORK,<br>LLC, and GCOE, LLC<br><br><br>Defendants. | Case No. 3:19-cv-00296-BJB-RSE<br><br><br><br>COLLECTIVE ACTION PURSUANT<br>TO 29 U.S.C. § 216(B) |

## SETTLEMENT AGREEMENT

This settlement agreement (hereinafter "Agreement") is entered into between Plaintiff Nicole Love (collectively hereinafter "Named Plaintiff"), on behalf of herself and all "FLSA Collective Members" as that term is defined in paragraph II.A of this Agreement, and Defendants Gannett Co., Inc., Gannett Satellite Information Network, LLC and GCOE, LLC (collectively "Defendants"), by and through their respective legal counsel, to resolve claims asserted in the above-referenced case (the "Lawsuit"). Named Plaintiff and Defendants may be referred to individually as a "Party" or collectively as the "Parties." This Agreement is made for the following purposes and with reference to the following facts:

## I.   RECITALS

WHEREAS, Grace Hall filed the Lawsuit on January 21, 2019, in the United States District Court for the District of Arizona, alleging that Defendants failed to pay hourly call center employees for alleged "off-the-clock" time in violation of the Fair Labor Standards Act ("FLSA").

WHEREAS, on April 15, 2019, the Parties filed a Joint Motion to Transfer Venue to the United States District Court for the Western District of Kentucky;

WHEREAS, on April 15, 2019, the Court granted the Parties' Joint Motion to Transfer Venue and the collective/class action lawsuit was transferred to the United States District Court for the Western District of Kentucky, Louisville Division;

WHEREAS, on September 12, 2019, Darren Brasher filed a First Amended Collective/Class Action Complaint styled *Darren Brasher, et al. v. Gannett Co., Inc. et al.*, Case No. 3:19-cv-00296-JHM-RSE (the "Lawsuit");

WHEREAS, on January 22, 2021, the Court granted Plaintiff's Motion for Conditional Certification and ordered that notice be sent to "all hourly call-center employees of Gannett Co., Inc., Gannett Satellite Information Network, LLC and/or GCOE, LLC subject to an adherence policy and employed after September 16, 2016;

WHEREAS, ninety-four (94) individuals have filed a consent to join the Lawsuit;

WHEREAS, the Parties attended mediation on April 28, 2021, with mediator Dennis Clifford (the "Mediation");

WHEREAS, the Parties have a *bona fide* dispute as to hours worked and unpaid wages and have agreed to a claims-made, global, company-wide resolution of the Lawsuit;

WHEREAS, Defendants dispute the allegations in the Lawsuit and contends that it properly paid all hourly call center employees for all hours worked as required by law;

WHEREAS, the purpose of this Agreement is to finally and fully resolve, settle, release, and discharge all wage and hour-related claims asserted by Named Plaintiff, individually and on behalf of all FLSA Collective Members, against Defendants in the Lawsuit;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained in this Agreement and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, and to avoid litigation, the parties hereby agree as follows:

## II.  **DEFINITIONS**

A.  **FLSA Collective Members** - For purposes of this Agreement, the "FLSA Collective Members" include Named Plaintiff, Opt-In Plaintiffs who are identified on Exhibit A, and all current and former hourly call-center employees of Gannett Co., Inc., Gannett Satellite Information Network, LLC and/or GCOE, LLC subject to an adherence policy and employed at any time from September 16, 2016, through the date the Court enters an order approving this Agreement ("Collective Period"), anywhere in the United States.

B.  **Claimants** - "Claimants" are:

1.  Named Plaintiff;

2.  Opt-In Plaintiffs identified on Exhibit A; and

3.  FLSA Collective Members who return a Claim Form and Release Agreement as described in paragraph IV.B.6 below and become "Participating FLSA Collective Members."

C.  **Defendants** – "Defendants" are Gannett Co., Inc., Gannett Satellite Information Network, LLC and GCOE, LLC, their past, present and/or future, direct and/or indirect, officers,

directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

    D.    **Collective Counsel** – "Collective Counsel" means Anderson Alexander, PLLC.

    E.    **Defendants' Counsel** – "Defendants' Counsel" means Seyfarth Shaw LLP.

    F.    **Third-Party Administrator** – "Third-Party Administrator" means Rust Consulting, Inc. ("Rust"), located at 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402.

## III.    COMPROMISE ACKNOWLEDGMENT

    A.    The Parties and their respective counsel agree that this Agreement is entered into solely upon the basis of a compromise of disputed claims, and that this Agreement is not, and is not to be construed as, an admission by the Parties of any liability whatsoever, including any violation of federal, state, local, or common law, statute, ordinance, regulations, or order. The Parties further agree that the furnishing of consideration shall not be deemed or construed for any purpose as an admission of liability or wrongful conduct of any kind by any Party.

    1.    Defendants deny that they or any of their present or former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, or affiliates, have engaged in any unlawful activity, have failed to comply with the law in any respect, have any liability to anyone under the claims asserted in the Lawsuit, or that, but for the settlement and the Agreement, a collective should be certified in the Lawsuit. This Agreement is entered into solely for the purpose of compromising highly disputed claims.

    2.    Nothing in this Agreement is intended or will be construed as: (1) an admission of liability or wrongdoing by Defendants or any of their former or present owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, or affiliates; (2) an admission by Named Plaintiff that any of her claims were non-meritorious; or (3) an admission that any defense asserted by Defendants was meritorious. This settlement and the fact that Named Plaintiff and Defendants were willing to settle the Lawsuit will have no bearing on, and will not be admissible in connection with, any litigation other than solely in connection with, and as specified in, this Agreement.

    3.    Whether or not there is Final Approval, neither the settlement, this Agreement, any documents, statements, proceeding, or conduct related to the settlement or this Agreement, nor any reports or accounting of those matters, will be: (1) construed as, offered, or admitted in evidence as, received as, or deemed to be evidence, for any purpose adverse to Defendants or any Released Party, including,

but not limited to, evidence of a presumption, concession, indication, or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, or damage; or (2) disclosed, referred to, or offered in evidence against any of the Released Parties in any further proceeding in the Lawsuit or any other civil, criminal, or administrative action or proceeding except for purposes of effectuating the settlement pursuant to this Agreement.

B.     Named Plaintiff believes that the claims asserted have merit.  However, Named Plaintiff recognizes the significant cost to prosecute the litigation against Defendants through trial and the uncertain outcome and risk of loss in any litigation, especially in a complex action such as this, and the difficulties and delays inherent in such litigation.  Named Plaintiff also is mindful of the potential problems of proof and possible defenses to the causes of action asserted.

C.     Named Plaintiff believes that this Agreement confers substantial benefits on all FLSA Collective Members and that it is fair, reasonable, adequate, and in the best interest of herself and the FLSA Collective.

D.     Collective Counsel have independently concluded that the terms of this Agreement are fair, reasonable, adequate, and in the best interests of the FLSA Collective, and independently determined that settlement and dismissal of the Lawsuit with prejudice is proper.

E.     Defendants believe the claims asserted by Named Plaintiff, on behalf of herself and the FLSA Collective, are without merit.  Defendants deny all the claims and contentions asserted by Named Plaintiff as well as all charges of wrongdoing and liability arising out of any of the acts, omissions, facts, transactions, or occurrences alleged or that could have been alleged in the Lawsuit.

F.     Defendants also deny that the Lawsuit is appropriate for collective action treatment, except for settlement purposes.

G.     Defendants have vigorously contested the claims, but have determined that further defense of this action could be protracted and contrary to its best interest and that it is desirable that the action be completely and finally settled upon the terms and conditions set forth herein.  In addition, Defendants have taken into account the uncertainty and risks inherent in litigation, especially in a complex action like this.

H.     Nothing in this Agreement or any action taken to implement the Agreement or any statements, discussions, communications, or materials prepared or used during the course of settlement negotiations shall be used in any other proceeding of any kind or be considered evidence of a violation of any federal, state, or local law, statute, rule or executive order, or any obligation or duty at law or equity.  Notwithstanding the foregoing, the Agreement may be used in any proceeding that has as its purpose the interpretation or enforcement of the Agreement or any orders or judgment of the Court entered in connection therewith.

I.     Nothing herein shall be construed as an admission or acknowledgement by the Parties that any class or collective action treatment is either proper or improper in the Lawsuit, except for

purposes of settlement. Neither the Agreement nor approval by the Court of the Agreement shall be admissible in any other proceeding regarding the propriety of collective action treatment.

J.       In the event this Agreement is not approved, is terminated, or fails to be enforceable, the Parties shall not be deemed to have waived in this action their claims, positions, objections, or defenses, including their positions on whether the Lawsuit is appropriate for class or collective action treatment.

IV.   **TERMS OF THE SETTLEMENT AGREEMENT**

A.    **Appointment of Third-Party Administrator**

1.      Third-party administrator Rust Consulting shall be used to: (a) provide notice of the settlement to FLSA Collective Members; (b) administer the claims process; (c) set up and administer a qualified settlement fund to disburse of settlement payments; (d) verify and/or calculate settlement amounts for each Claimant; (e) distribute all settlement checks; (f) address any questions from Settlement Class members; (g) prepare and mail all necessary W-2 and 1099 IRS forms; and (h) perform any other duties necessary to effectuate the agreement.

2.      The Parties shall cooperate fully to resolve promptly any issues identified by the third-party administrator.

3.      The Parties will have equal access to the third-party administrator, and the third-party administrator will provide regular reports to the Parties, but no less frequently than every two weeks, regarding the status of the mailing of the notices and claims forms, the settlement administration process, distribution of the settlement checks, and all other necessary duties.

B.    **Settlement Approval and Notice to FLSA Collective Members**

1.      The Parties shall agree to the form and content of a motion for approval of FLSA settlement and certification of a collective action and a corresponding proposed order ("approval motion") to be filed by Collective Counsel within seven (7) days after this Agreement is fully executed.

2.      Within three (3) business days after the approval motion is granted, Defendants shall provide the third-party administrator with the identification of the FLSA Collective Members, including the name and last known address, and email address if contained in Defendants' available records, for each of the FLSA Collective Members. This list shall be based on Defendants' available records and shall be treated as confidential. Collective Counsel may also provide address information to the third-party administrator for those individuals identified in Exhibit A.

3.      Within three (3) business days after the approval motion is granted, Defendants shall provide the third-party administrator with the number of weeks worked by each FLSA Collective Member in the Collective Period, which the third-party administrator shall use for

purposes of calculating the individual damage amounts for each FLSA Collective Member, as described in Section IV(D)(7)(b) below.

       4.    Within ten (10) business days after the approval motion is granted, the third-party administrator shall provide to Collective Counsel and Defendants' counsel a complete schedule of all FLSA Collective Members and the amount of settlement to be listed in each FLSA Collective Member's notice. The Parties shall then have five (5) business days to review the schedule and raise any objections to the final schedule in writing with proper notice to all Parties as set forth herein. In the event of a dispute, the Parties will attempt to confer in good faith and, failing agreement, submit the dispute to the Court.

       5.    In the event of no objection to the final schedule after five (5) business days or, if an objection arises, three (3) business days after all objections are resolved, the third-party administrator shall mail via first class U.S. mail, a notice of FLSA settlement providing information about the lawsuit and settlement agreement. The FLSA Collective Members will also receive an opt-in form that they will be required to execute in order to participate in the Settlement. The opt-in form will include the release of all wage and hour claims, which the FLSA Collective Members will be required to agree to in order to participate in the settlement. The proposed FLSA Settlement Notice is attached as Exhibit B and the opt-in form for the FLSA Collective Members is attached as Exhibit C.

       6.    The FLSA Settlement Notice shall instruct the FLSA Collective Members that they must follow the instructions to opt-in to the settlement and return their opt-in form to the third-party administrator postmarked no later than sixty (60) days after the date the notice was initially mailed. Those FLSA Collective Members who timely return their completed opt-in form to the third-party administrator will be referred to as Participating FLSA Collective Members.

       7.    The third-party administrator shall perform a reasonable search using a national computerized address database in an effort to find FLSA Collective Members whose notices were not delivered. If the third-party administrator's search is successful, the third-party administrator shall re-mail the notice within five (5) days of obtaining the correct address.

       8.    During, and at the conclusion of, the 60-day period, the third-party administrator shall report to the Parties' counsel the number of FLSA Settlement Notices that have been returned as undeliverable and the number of FLSA Collective Members who have opted in to the Settlement.

       9.    FLSA Collective Members other than the Named Plaintiff and the Opt-In Plaintiffs, who fail to return a timely and complete Opt-In Form and Release Agreement postmarked within the applicable 60-day period shall be ineligible to receive any settlement payment pursuant to this Agreement but will not release their claims against Defendants, either. An Opt-In Form and Release Agreement is not complete if the FLSA Collective Member fails to make the required declaration or sign the Opt-In Form and Release Agreement as required.

10.     The Parties agree that neither they, nor their counsel, shall make any effort to solicit or otherwise persuade FLSA Collective Members to participate in the settlement.  Collective Counsel are permitted to contact Named Plaintiff and the Opt-In Plaintiffs to ensure the contact information on file with Collective Counsel's office is correct.

C.     **Amended Complaint**

1.     Within five (5) days after this agreement is fully executed, Collective Counsel shall file a Second Amended Collective Action Complaint removing the state-law claims alleged as class actions pursuant to Federal Rule of Civil Procedure 23(b)(3) and removing all named plaintiffs, but Named Plaintiff Nicole Love. Collective Counsel will seek leave file the agreed Second Amended Collective Action Complaint with the Court and Defendants will not oppose such a request. The request shall seek to stay Defendants' obligation to file an Answer while the Motion for Settlement Approval is pending before the Court, and will further request that, in the event the Motion for Settlement Approval is denied, that Defendants' deadline to file an Answer fall twenty-one (21) days after the order denying the Motion for Settlement Approval is issued.

D.     **Waiver and Release**

1.     By timely returning a complete Opt-in Form and Release Agreement, each Participating FLSA Collective Member, agrees to release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in this action, including under the Fair Labor Standards Act ("FLSA"), under the theories of *quantum meruit*, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, and all claims for costs, attorneys' fees and/or interest, or any other benefits against Defendants (collectively, "Released Collective Claims").

2.     Named Plaintiff, by executing this Agreement, further agrees to a general release of all claims, known or unknown, she may have against Defendants, existing through the date she executes this Agreement. By signing this Agreement, Nicole Love, herself (and not on behalf of the FLSA Collective or any members of the FLSA Collective) shall release, acquit, and discharge all Defendants from all Released Claims, and also from any and all claims, demands, claims for costs and attorneys' fees, or causes of action of any kind whatsoever (upon any legal or equitable theory whether contractual, common law, statutory, Federal, State or otherwise), whether known or unknown, that arose, accrued or took place at any time on or prior to the date on which this Agreement is executed. Through the full and general release discussed in this Paragraph, Nicole Love agrees and represents that she has not assigned or in any way conveyed, transferred or encumbered all or any portion of the claims or rights otherwise released

3.     Nothing in this Agreement shall be considered a waiver of any claims by Participating FLSA Collective Members that may arise after the date the Agreement is approved by the Court.

4.      The Parties acknowledge that the above waiver and release was separately bargained for and is a material element of this Agreement.

5.      Upon final approval of the Agreement by the Court, Named Plaintiff, Opt-In Plaintiffs, and Participating FLSA Collective members shall be deemed to have released his or her Released Collective Claims. For purposes of clarity, any FLSA Collective Member who does not return a timely opt-in form will have no right to receive any payments under this Agreement, but will also not waive or release any claims under this Agreement.

E.      **Settlement Amounts**

1.      **Gross Settlement Amount**: In full consideration for the terms, conditions, and promises in this Agreement, Defendants agree to pay a Gross Settlement Amount not to exceed $650,000.00. The Gross Settlement Amount includes all amounts to be paid by Defendants under this Agreement, including settlement payments to Participating FLSA Collective Members, all attorney's fees and litigation costs, interest, penalties, service award for Named Plaintiff, and third-party administrator payments and costs. The Gross Settlement Amount is the maximum amount that Defendants are obligated to pay under this Agreement, except that, in addition to the Gross Settlement Amount, Defendants shall pay their share of employer payroll taxes on the applicable portions of the settlement payments. In no event shall Defendants be required to pay more than the Gross Settlement Amount in complete satisfaction of all its obligations under this Agreement, except, as provided herein.

2.      **Collective Counsel's Attorneys' Fees and Costs**: Defendants agree not to oppose a request by Collective Counsel for reasonable attorney's fees and litigation costs, provided that the amount of requested attorney's fees does not exceed $260,000.00, inclusive of litigation costs. Collective Counsel agrees that they shall not seek attorney's fees and litigation costs in excess of this amount. The attorney's fees and litigation costs shall be paid solely from the Gross Settlement Amount. Except as set forth herein, Collective Counsel and the Named Plaintiff, on behalf of themselves and all Participating FLSA Collective Members, agree that they shall neither seek nor be entitled to any additional costs, attorneys' fees, or awards in this case under any theory or recovery. Collective Counsel will receive an IRS Form 1099 with respect to their awarded attorney's fees and expenses.

a)      Within five (5) days after an order granting final approval of an award of attorney's fees and litigation costs, Collective Counsel shall provide Defendants with a signed W-9 IRS form and wiring instructions for the payment of attorneys' fees and litigation expenses.

b)      Within ten (10) business days after receipt of the signed W-9 IRS form and wiring instructions, but not before fifteen (15) business days after the entry of an order granting final approval of an award of attorneys' fees and litigation costs, Defendants shall transmit the funds for attorney's fees and litigation costs by electronic fund transfer (EFT) to Anderson Alexander, PLLC.

3.      **Named Plaintiff Service Award**: In recognition of her leadership role on behalf of the FLSA Collective and time and effort in pursuing these actions, Named Plaintiff shall

each be entitled to service award of $5,000.00, subject to the Court's final approval. The service payment shall be treated as non-wage income and shall be included on the IRS form 1099 to be issued to Named Plaintiff in conjunction with her settlement sum.

        a)    Within five (5) days after an order granting final approval of an award of attorney's fees and litigation costs, Collective Counsel shall provide Defendants with Named Plaintiff's signed W-9 IRS form and wiring instructions for the payment of the service award.

        b)    Within ten (10) business days after receipt of the signed W-9 IRS form and wiring instructions, but not before fifteen (15) business days after the entry of an order granting final approval of the service award, Defendants shall mail Named Plaintiff a check for her Service Award.

    4.    **The Gross Settlement Amount**: If the court approves the settlement, within fifteen (15) business days after the Opt-In Deadline, the Third-Party Administrator will provide Defendants with the total amount due or Claimed Settlement Amount, based on the claim forms received for the Participating FLSA Collective Members, in addition to the amount due for Defendants' portion of the payroll taxes. Defendants shall make a payment of the Claimed Settlement Amount within fifteen (15) business days of receiving the total amount due from the Third-Party Administrator. The Claimed Settlement Amount shall be maintained in an interest-bearing account by the Third-Party Administrator.

    5.    **Costs of Third-Party Administrator:** The entire administrative costs of the third-party administrator, including payment for all services and mailings, shall be paid from the Gross Settlement Amount and are due to the Third-Party Administrator with the funding of the Claimed Settlement Amount.

    6.    **Employee Payroll Taxes:** All Participating FLSA Collective Members are responsible for paying their share of FICA, FUTA, SUTA, Medicare and any other applicable payroll taxes for the payment amounts allocated to them under this Agreement, according to the law. The Third-Party Administrator will deduct these amounts from the settlement payments sent to Claimants and remit them to the appropriate governmental entity.

    7.    **Payment Amounts to FLSA Collective Members**

        a)    **Net Settlement Fund** – The "Net Settlement Fund" is the Gross Settlement Amount minus any court-approved service awards for the Named Plaintiff, costs of third-party administration, and attorney's fees and costs.

        b)    **Pro-Rata Amount** - Each FLSA Collective Member will be assigned a specific settlement amount based on the number of weeks he or she worked for Defendants during the Collective Period. The Pro-Rata Amount is to be calculated by dividing the number of weeks each FLSA Collective Member worked for Defendants during the Collective Period by the total number of such weeks for the entire FLSA Collective, and then multiplying that percentage by the amount of the Net Settlement Fund.

       c)      **Claimed Settlement Amount** – The "Claimed Settlement Amount" includes the portion of the Net Settlement Fund for which the Participating Collective Members returned their claim forms, in addition to the amount due for Defendants' portion of the payroll taxes.

       d)      Any FLSA Collective Members, other than Named Plaintiff and the Opt-In Plaintiffs, who do not return the opt-in form by the deadline shall not be entitled to their portion of the Net Settlement Fund.

       e)      Settlement payments made to Participating FLSA Collective Members shall be allocated in each instance as follows: 50 percent to wages, which will be reported on IRS Form W-2 and subject to applicable withholdings required by law; and 50 percent to liquidated damages, which will be reported on IRS Form 1099 and not subject to withholdings.  Participating FLSA Collective Members shall be solely responsible for the payment of taxes (federal, state, and local) owed as a result of receiving any consideration under this Agreement.  The Parties to this Agreement specifically agree that Defendants have not made any representations regarding the taxability of any payments made pursuant to this Agreement.  The Participating FLSA Collective Members agree and warrant that they have been and remain solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental authority from receipt of any funds received from Defendants pursuant to this Agreement.  The Participating FLSA Collective Members hereby agree to indemnify, pay the costs of defense, and hold Defendants harmless from and against any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by the Participating FLSA Collective Members, if any, or incurred by Defendants.  However, the Participating FLSA Collective Members are not responsible for any federal, state, or local tax liability of Defendants.

**F.**      **Court Approval**

       1.      In the event this Agreement is not approved by the Court, the Agreement shall be null and void in its entirety, unless expressly agreed to in writing by the parties.

**G.**      **Delivery of Settlement Checks**

       1.      The third-party administrator shall mail each Participating FLSA Collective Member's settlement check, W-2 and 1099 within forty-five (45) days after the close of the opt-in period.  For any Participating FLSA Collective Member whose settlement check is returned as undelivered, the third-party administrator shall take reasonable steps to locate the Claimant and re-mail the check. Collective Counsel may assist in seeking to locate members of the FLSA Collective whose settlement check was returned as undeliverable.

       2.      Settlement checks which are not presented for payment or deposited after ninety (90) days of the mailing date ("Reversion Date") will not be negotiable and shall revert to Defendants.  The Third-Party Administrator shall remit such funds and all interest accrued in the account holding the Claimed Settlement Amount within five (5) business days of the Reversion Date.

**H.**     **Dismissal of Action With Prejudice**

Based upon the provisions herein, Named Plaintiff, on behalf of the Participating FLSA Collective Members, agrees that this action shall be dismissed with prejudice. If the Court does not enter an order dismissing with prejudice the claims of the Participating FLSA Collective Members upon approval of this Agreement, Named Plaintiff shall file a stipulation dismissing all of the claims in the Lawsuit with prejudice within five days of court approval of this Agreement.

**I.**     **Parties' Authority**

1.     The signatories to this Agreement represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions of the Agreement. The Parties further agree that this Agreement contains all materially agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.

2.     The Parties acknowledge that throughout negotiations they have been represented by counsel experienced in wage and hour class and collective action litigation and that this Agreement is made with the consent and approval of counsel who have prepared the Agreement.

**J.**     **Mutual Full Cooperation**

The Parties agree to cooperate fully to implement and effectuate the terms of this Agreement including executing all necessary documents.

**K.**     **Enforcement Actions**

If any Party institutes any legal action or other proceeding for the purpose of enforcing this Agreement against any other Party, the unsuccessful Party shall be required to pay the successful Party all reasonable attorney's fees and costs incurred in enforcing the Agreement.

**L.**     **Benefits and Employment Unaffected**

1.     To the extent permitted by law, in no event shall any settlement payment to any Participating FLSA Collective Member, or any Service Award to the Named Plaintiff, create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such payment be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

**M.**     **Confidentiality and Limitations on Publicity**

1.     The Parties agree that they shall not publicize this settlement, the settlement amount, the sum of individual Participating FLSA Collective Member's shares or the events and

negotiations surrounding this Agreement in any way except by joint pleadings or unopposed motions filed with the Court, if required. Collective Counsel may communicate with the Third-Party Administrator, Rust, and the Participating FLSA Collective Members regarding the settlement amount, the sum of individual Participating FLSA Collective Members' damages, and the events surrounding this Agreement without violating this confidentiality provision. Nothing in this paragraph prevents Defendants from making necessary public disclosures regarding the settlement and discussing the settlement with securities analysts and financial institutions or as otherwise necessary in the conduct of its business. In addition, Collective Counsel shall make no press release or other public statements regarding this matter, except as approved by the Court to facilitate Notice, and no reference to the settlement on their website or marketing materials, other than a generic reference that does not identify, or allow identification of Defendants. Collective Counsel may identify their participation in the case as counsel or lead counsel in submission to courts concerning their qualifications as class counsel.

2.      If any Party believes a statement is made in violation of paragraph IV.L.1, the Parties shall meet-and-confer informally in an effort to resolve the dispute. If the dispute cannot be resolved informally, it shall be submitted to the Court for resolution. In the event the Court decides that a violation has occurred, the determination shall be binding and the offending Party must immediately cease and desist from making the statement or statements.

3.      Without prior written authorization from Defendants, Named Plaintiff will not discuss any Confidential Information with any attorney or representative of an attorney (other than Named Plaintiff's own attorneys), reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles, or writings of any kind, as well as film, videotape, audiotape, or any other medium. Nothing in this section is intended to prevent the Named Plaintiff from disclosing information concerning her employment with Defendants that is of the sort that would customarily be contained on a resume. Nothing in this section limits or shall be construed to limit any preexisting confidentiality obligations.

4.      Named Plaintiff understands that nothing contained in this Agreement limits her ability to file a charge or complaint with the Equal Employment Opportunity Commission (EEOC), the National Labor Relations Board (NLRB), the Occupational Safety and Health Administration (OSHA), the Securities and Exchange Commission (SEC), Department of Labor (DOL), or any other federal, state or local governmental agency or commission (Government Agencies). Moreover, Named Plaintiff understands she is not limited in her ability to discuss her legal claims, rights, and obligations with an attorney of her choosing regarding any claims not released by this Agreement. Named Plaintiff further understands that this Agreement does not limit her ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice to the Company. This Agreement does not limit Named Plaintiff's right to receive an award for information provided to any Government Agencies.

**N.**   **Modification**

This Agreement and its exhibits may not be changed, altered, or modified, except in writing and signed by the Parties, and, to the extent required by law, approved by the Court.

**O.**   **Entire Agreement**

This Agreement and its exhibits constitute the entire agreement between the Parties concerning the subject matter hereof.  No extrinsic evidence of any kind shall modify or contradict the terms of this Agreement.  For the avoidance of doubt, this Agreement does not vitiate or modify any Claimant's obligation under any other written agreement between such individual and Defendants or any of their former or present parents, subsidiaries, and affiliated entities that was not executed in connection with this Lawsuit, such as any non-disclosure agreement, separation agreement, or any other release agreement between the individual and Defendants or any of their former or present parents, subsidiaries, and affiliated entities, or any other agreement that such individual may have signed in connection with his or her assignment or engagement to provide services to Defendants or any of their former or present parent, subsidiary, and affiliated entities or the termination of such assignment or engagement.   No rights under this settlement may be waived except in writing.

**P.**   **Voiding The Agreement**

1.      In the event this Agreement is not approved by the Court, the Agreement shall be null and void in its entirety, unless expressly agreed to in writing by the Parties.

2.      Notwithstanding the above paragraph, if the Court rejects any portion of IV.M.1 and IV.M.2, the Parties agree that such portions shall be removed from the Agreement or modified in a manner consistent with the Court's ruling.  The enforceability of the remainder of the Agreement shall not be affected by such removal or modification.

3.      If judicial approval of the Agreement is otherwise denied, the Parties shall attempt to reach agreement on provisions rejected by the Court for a period not less than 45 days after the date on which approval is denied.  The Parties shall file a joint motion for a stay of the Lawsuit during the 45-day period.

**Q.**   **Counterparts**

This Agreement may be executed in counterparts, and when each Party has executed at least one counterpart, the counterpart shall be deemed an original, and when taken together, shall constitute on Agreement, which shall be binding and effective as to all Parties.

**R.**   **Binding on Assigns And Successors**

This Agreement shall be binding upon, and inure to the benefit of, the Parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

**S.**     <u>Severability</u>

If any portion of this Agreement is found to be unenforceable, all other provisions will remain fully enforceable, subject to the Parties' rights under Section P.

**T.**     <u>Applicable Law</u>

This Agreement shall be governed by, construed, interpreted, and enforced in accordance with the laws of the state of Kentucky, without regard to its principles of conflicts of laws.

**U.**     <u>Miscellaneous</u>

1.     Named Plaintiff and her counsel agree that any documents and information exchanged in connection with this settlement is confidential and shall be used solely for purposes of ensuring compliance with the terms of this Agreement and shall otherwise be kept strictly confidential.

2.     The headings contained in this Agreement are for reference only and are not to be construed as part of the Agreement.

3.     The United States District Court for the Western District of Kentucky shall have jurisdiction to interpret and enforce this Agreement.

4.     No Party shall be considered a prevailing party for any purpose.

5.     Defendants and Named Plaintiff waive all appeals from the Court's Final Approval of the Settlement unless the Court materially modifies the settlement.

6.     The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Agreement.

7.     The Parties represent and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

**V.**     <u>Notices</u>

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder among the Parties and/or the Third-Party administrator shall be in writing and shall be delivered by e-mail as follows:

**To Named Plaintiff and the FLSA Collective Members:**

Clif Alexander
team@a2xlaw.com

**To Defendants:**
Linda Schoonmaker
LSchoonmaker@seyfarth.com

**To Third Party Administrator:**
[INSERT RUST CONTACTS]

Agreed as to form:

Dated: May 26, 2021

_Clif Alexander_
Clif Alexander (May 26, 2021 08:43 CDT)

Clif Alexander

Dated: May 27, 2021

_Linda Schoonmaker_

Linda Schoonmaker

Executed by:

Dated: _May 25, 2021_

nicole love (May 25, 2021 11:35 EDT)

Named Plaintiff Nicole Love

Dated: _May 26, 2021_

Gannett Co., Inc., Gannett Satellite Information Network, LLC, and GCOE, LLC

Title: _Sr. V.P., Secretary and Chief Legal Officer_

# Exhibit A

| | NameLast | NameFirst |
|---|---|---|
| 1 | Alexander | Tierica |
| 2 | Anderson | Cornita |
| 3 | Barnes | Ebony |
| 4 | Bohannon | Ashley |
| 5 | Boyd | Daarina |
| 6 | Brasher | Darren |
| 7 | Brent | Shakela |
| 8 | Bridgewater | Twinisha |
| 9 | Brown | Endora |
| 10 | Brown | James |
| 11 | Burton | Terri |
| 12 | Burton | Lakinya |
| 13 | Butler | Tia |
| 14 | Carr | Glennisha |
| 15 | Clark | Chelsie |
| 16 | Clayton | David |
| 17 | Conatser | Carrie |
| 18 | Cooper | Erica |
| 19 | Copeland | Monica |
| 20 | Edwards | Chrystal |
| 21 | Ehli-Welton | Barbara |
| 22 | Fisher | Kimberly |
| 23 | Fisher | Jada |
| 24 | Foree-Plaiss | Melita |
| 25 | Gates | Kimberly |
| 26 | Gibbs | Veronne |
| 27 | Gibson | Danielle |
| 28 | Green | Elexus |
| 29 | Groves-Jordan | Tamera |
| 30 | Hall | Grace |
| 31 | Hall | Don |
| 32 | Harris | Victoria |
| 33 | Hayes | Olivia |
| 34 | Hendrix | Conchita |
| 35 | Herp | Brandie |
| 36 | Hoier | Nicole |
| 37 | Houston | Nikkia |
| 38 | Howard | Valerie |
| 39 | Howie | Melanie |
| 40 | Jackson | Alex |
| 41 | Jacobi | Magnolia |

| | NameLast | NameFirst |
|---|---|---|
| 42 | Jacoway | Ronnella |
| 43 | Johnson | Reginay |
| 44 | Jones | Essence |
| 45 | Jones | Rodrika |
| 46 | Kenemore | Nakiya |
| 47 | Lassey | Adjelley |
| 48 | Latham | Deedra |
| 49 | Love | Nicole |
| 50 | Lyons | Victoria |
| 51 | Maddox | JaQuisha |
| 52 | Maddox | Diamond |
| 53 | Madison | Mary |
| 54 | Mariani | Rick |
| 55 | Mason | Ahmya |
| 56 | McBee | Tameka |
| 57 | McCullough | Chesnee |
| 58 | Merriweather | Jaylon |
| 59 | Mitchell | Markell |
| 60 | Mitchell | Charice |
| 61 | Moore | Lanora |
| 62 | Morris | Ke'Aaron |
| 63 | Mosely | Tami |
| 64 | Nelson | Rashawnna |
| 65 | Nevils | Shanna |
| 66 | Oates | Aurellia |
| 67 | Peay | Melody |
| 68 | Pope | Erica |
| 69 | Posley | Leslie |
| 70 | Price | Nasha |
| 71 | Pulce | Rosalind |
| 72 | Smith | Jessica |
| 73 | Soden | Pauline |
| 74 | Stark | Shaquita |
| 75 | Stevenson | Whitney |
| 76 | Stewart | Alexis |
| 77 | Stewart | Dawn |
| 78 | Swearingen | Bernice |
| 79 | Thompson | Marcella |
| 80 | Thompson | Chelsey |
| 81 | Todd | Michelle |
| 82 | Torres | Shae |

|    | NameLast   | NameFirst |
|----|------------|-----------|
| 83 | Turner     | Deborah   |
| 84 | Wales      | Brandi    |
| 85 | Walker     | Sharita   |
| 86 | Washington | Tanya     |
| 87 | Way        | Rachel    |
| 88 | Whiteside  | Conniqua  |
| 89 | Whitley    | Melina    |
| 90 | Williams   | Dorothea  |
| 91 | Williams   | Tamara    |
| 92 | Williams   | Michael   |
| 93 | Williams   | LeAndra   |
| 94 | Wimberly   | Emerald   |
| 95 | Young      | Breauna   |

# Exhibit B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| NICOLE LOVE,<br>Individually and on<br>behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GANNETT CO., INC., GANNETT<br>SATELLITE INFORMATION NETWORK,<br>LLC, and GCOE, LLC<br><br>        Defendants. | Case No. 3:19-cv-00296-BJB-RSE<br><br><br>COLLECTIVE ACTION PURSUANT<br>TO 29 U.S.C. § 216(B) |

### <u>NOTICE OF SETTLEMENT</u>

TO:    Current or Former Employees of Gannett Co., Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC (collectively "Defendants" or "Gannett").

You are receiving this notice because you previously joined this lawsuit or you worked in one of the eligible positions involved in the settlement of this lawsuit (hourly call-center employees) at Gannett Co., Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC between September 16, 2016, and [date of final approval order]. The lawsuit involved a claim that individuals in these positions worked more than 40 hours per week and should have received overtime pay for alleged "off-the-clock" work. Defendants deny any liability or wrongdoing, or that these individuals were entitled to overtime pay. The parties have agreed to settle this litigation, and the Court has approved the settlement. This notice describes what you must do if you choose to receive compensation as a result of this settlement.

Enclosed with this notice is an Opt-In Form and Release Agreement that includes (1) the settlement amount that you may be paid pursuant to the settlement agreement reached by the parties, and (2) an incorporated waiver and release of any wage and hour-related claims that you may have against Defendants. In order to receive the amount identified in the Opt-In Form and Release Agreement you ***must***:

1.    Review the Claim Form and Release Agreement carefully;

2.    Sign and date the Claim Form and Release Agreement; and

3.    Mail, email, or fax the completed Claim Form and Release Agreement to the following address within 60 days of the notice date below: [ADDRESS OF THIRD-PARTY ADMINISTRATOR]

If you fail to mail and postmark, email or fax the enclosed Claim Form and Release Agreement within 60 days of the date of this notice, by [ Deadline], your settlement funds cannot be released to you by the claims administrator. However, you will not release your claims against Defendants, either.

NOTICE DATE: _____

# Exhibit C

---

### OPT-IN FORM AND RELEASE AGREEMENT
*Love v. Gannett Co., Inc., et al.*, 3:19-cv-00296-BJB-RSE
United States District Court for the Western District of Kentucky–Louisville Division

---

Pursuant to the Order of the District Court, dated [approval date], if you choose to opt-in to this litigation and receive payment under the settlement, you must sign this Opt-In Form and Release Agreement and return it by either first-class U.S. mail, postmarked no later than **[60 days from notice mailing], 2021**, or by email or fax, received no later than **[60 days from notice mailing], 2021]** to the following address:

[settlement administrator address/email/fax]

If you fail to submit a signed Opt-In Form and Release Agreement by the due date listed above, your claim will be rejected and the Claims Administrator cannot release your payment to you (but you will not be bound by the provisions of the settlement agreement approved by the Court).

*Please do not mail or deliver this form to the Court or to any of the parties or their counsel. In addition, do not telephone the Judge or Clerk of the Court or any representative of Defendants about this form.*

<u>RELEASE OF CLAIMS</u>

By signing, I certify that I was employed by Gannett Co., Inc., Gannett Satellite Information Network, LLC, and/or GCOE, LLC ("Defendants") at some time between September 16, 2016 and [approval date] as an hourly call-center employee.

       1.       By signing, I further agree on behalf of myself and my heirs, descendants, dependents, executors, administrators, successors, and assigns, to fully and finally release and discharge Gannett Co., Inc., Gannett Satellite Information Network, LLC and GCOE, LLC, their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers. (collectively, the "Released Parties"), from all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in this action, including under the Fair Labor Standards Act ("FLSA"), under the theories of *quantum meruit*, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, and all claims for costs, attorneys' fees and/or interest, or any other benefits against Defendants (collectively, "Released Collective Claims"). I understand that my portion of the settlement is approximately _____ (less applicable taxes).

By signing, I acknowledge that Defendants' agreement to settle and any payment I receive is not an admission of liability or an acknowledgement of any violation of any law or statute; and

**OPT-IN FORM AND RELEASE AGREEMENT**
*Love v. Gannett Co., Inc., et al.*, 3:19-cv-00296-BJB-RSE
United States District Court for the Western District of Kentucky–Louisville Division

By signing, I acknowledge that I have had the opportunity to review this Opt-In Form and Release Agreement and that I understand and voluntarily agree to its terms.

_____          _____
Print Name (First, Middle, Last)          Signature



Date: _____

Claimant Identification                   Please make any name/address corrections
                                          below so we can ensure your settlement check
<<First>> <<Last>>                        reaches you:
<<Address1>>
<<Address2>>                              _____
<<City>>, <<State>> <<Zip>>
                                          _____