UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NICOLE LOVE,     Plaintiff,
*individually and on behalf of those similarly situated*,

v.     No. 3:19-cv-296-BJB-RSE

GANNETT CO. INC., GANNETT SATELLITE INFORMATION NETWORK, LLC, AND GCOE, LLC     Defendants

**MEMORANDUM OPINION & ORDER**

Three of Gannett's former call-center employees sued Gannett, raising several claims of unfair labor practices under state and federal law. *See* Original Complaint (DN 1).[1] They invoked the "collective action" provision of the Fair Labor Standards Act. *Id.* at 2. Under the FLSA, Congress authorized plaintiffs to sue "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).

After more than two years of litigation, two amended complaints (DNs 89 & 139), and an order granting conditional certification of an FLSA collective (DN 123), the lone remaining named plaintiff, Nicole Love, asks the Court to approve the parties' settlement agreement and dismiss this case with prejudice. *See* Unopposed Motion for Settlement Approval & Dismissal (DN 136).

**Judicial Approval of FLSA Settlements**

"The Sixth Circuit has yet to rule definitively on the question" whether the FLSA *requires* court approval of settlement agreements. *Steele v. Staffmark Invs.*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016). The parties have asked the Court to approve their settlement of this FLSA case, consistent with the general practice in this judicial district. *See, e.g.*, *Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019) ("As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court.") (quoting *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio Jun. 24, 2011)); *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) ("[C]ourts in the Sixth Circuit require a settlement agreement under the FLSA to be approved by the court.").

Courts in this circuit apply the same analysis to settlement agreements in the FLSA context that they do in the Rule 23 context. *See Mitcham*, 2019 WL 5496023, at *2. They ask whether a

---

[1] This order refers to Defendants Gannett Co. Inc., Gannett Satellite Information Network, LLC, and GCOE, LLC collectively as "Gannett."

1

proposed settlement agreement "is a 'fair, reasonable, and adequate' resolution of a bona fide legal dispute." *Id.*; *Burnham v. Papa John's Paducah, LLC*, No. 5:18-cv-112, 2020 WL 2065793, at *1 (W.D. Ky. Apr. 29, 2020). Courts also determine whether the settlement will distribute proceeds equitably and whether those distributions, any service award for the representative plaintiff, and the requested attorneys' fees are reasonable. *See Burnham*, 2020 WL 2065793, at *4–5.

### A. The settlement resolves a bona fide dispute.

"A federal district court approving any settlement of claims must determine whether a bona fide dispute exists to ensure that plaintiff employees have not"—at least not without good cause— "relinquished their rights to compensation guaranteed by the statute." *Id.* at *1 (quoting *Ross*, 2016 WL 7320890, at *2). "Without a bona fide dispute, no settlement could be fair and reasonable. Thus, some doubt must exist that Plaintiffs would succeed on the merits through litigation of their claims." *Id.* (quoting *Ross*, 2016 WL 7320890, at *2).

The hard-fought litigation in this case leaves little doubt about the existence of a bona fide dispute. Gannett has denied the allegations of FLSA violations at each turn. *See* Answer to Original Complaint (DN 21); Answer to FAC (DN 93); Objection to Motion for Conditional Certification (DN 96) at 11–12. And Gannett continues to deny FLSA violations in the proposed settlement agreement itself. Settlement Agreement (DN 136-1) at 3–4. This proposed settlement plainly resolves a bona fide dispute. *See Burnham*, 2020 WL 2065793, at *1.

### B. The settlement is a fair, reasonable, and adequate resolution of the dispute.

Courts generally "regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Jones v. H&J Restaurants*, No. 5:19-cv-105, 2020 WL 6205685, at *5 (W.D. Ky. Oct. 22, 2020). But courts in this district nevertheless generally apply a seven-factor test (originating in the Rule 23 context) for confirming that a settlement agreement is a fair, reasonable, and adequate resolution:

>    (1) the risk of fraud or collusion
>    (2) the complexity, expense and likely duration of the litigation
>    (3) the amount of discovery engaged in by the parties
>    (4) the likelihood of success on the merits
>    (5) the opinions of class counsel and class representatives
>    (6) the reaction of absent class members
>    (7) the public interest

*Burnham*, 2020 WL 2065793, at *2; *Mitcham*, 2019 WL 5496023, at *2; *Ross*, 2016 WL 7320890, at *2. Here, each of the applicable factors indicates the proposed settlement is fair, reasonable, and adequate.

*First*, absent evidence of fraud or collusion, the Court may presume none exists. *See Burnham*, 2020 WL 2065793, at *2 (quoting *Ross*, 2016 WL 7320890, at *3). Here, the parties agreed to a settlement only "after engaging in arm's-length negotiations with a well-respected

wage and hour mediator through formal mediation." Unopposed Motion at 7. No evidence of fraud or collusion exists in this case.

*Second*, no one doubts that "continuing to litigate this case would result in greater expense for both parties and increase the duration of the litigation." *Burnham*, 2020 WL 2065793, at *2.

*Third*, the parties have engaged in substantial investigation of the claims and enough discovery to ensure that "the issues are well understood by both sides." Unopposed Motion at 8; *Mitcham*, 2019 WL 5496023, at *3.

*Fourth*, the Court is in a relatively poor position to assess the likelihood of success on the merits because the parties have not argued many of the outstanding issues in this case. And the one issue most fully briefed—final certification of the collective—remains undecided after the Court's provisional decision. *See Schneider v. Goodyear Tire & Rubber Co.*, No. 5:13cv2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014). But as the Court noted in its Conditional Certification Order (DN 123), some questions certainly persist regarding who would prevail if the parties litigated this case to judgment.

*Fifth*, class counsel and the named plaintiff representing the collective both support the settlement. *See* Unopposed Motion at 9–10; *Ross*, 2016 WL 7320890, at *4 (support of counsel and collective representative weighs in favor of settlement approval).

The *sixth* factor—absent class members—is largely irrelevant in the FLSA context. Unlike in a Rule 23 settlement, no absent class members exist in this opt-in collective action. And the Court is unaware of any objections from those who have opted in, or attempted to opt in, to the collective. *Ross*, 2016 WL 7320890, at *4.

*Seventh*, and finally, the agreement promotes the "strong public interest in encouraging settlement" because it "reflects a reasonable compromise over issues actually disputed." *Id.* at *4 (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308, 2013 WL 2010702, at *7 (W.D. Ky. May 13, 2013)).

### C. The settlement proceeds will be distributed equitably.

"As a part of its exacting and thorough examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Burnham*, 2020 WL 2065793, at *4 (quoting *Crawford*, 2008 WL 4724499, at *9); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) ("[T]he settlement need only be fair, reasonable, and adequate.") (internal quotation marks omitted). "The need for equity in distributions of proceeds is no less in a collective-action settlement." *Burnham*, 2020 WL 2065793, at *4 (quoting *Crawford*, 2008 WL 4724499, at *9).

As explained in the motion, "[e]ach FLSA Collective Member (including Plaintiff and Opt-In Plaintiffs) will be assigned a specific settlement amount based on the number of weeks he or she worked for Defendants during the Collective Period." Unopposed Motion at 3; Settlement Agreement at 9. The Court agrees that this formula makes good sense in light of the work and

violations alleged in this case, and therefore "ensures that the Net Settlement Amount is distributed fairly to the FLSA Collective Members." Unopposed Motion at 12.

### D. The service award for the named plaintiff is reasonable.

Courts often grant so-called service awards to named plaintiffs or collective representatives to compensate them "for the services they provided and the risks they incurred during the course of the class action litigation." *Ross*, 2016 WL 7320890, at *5 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010)); *see, e.g.*, *Ditsworth v. P&Z Carolina Pizza*, No. 1:20-cv-84, 2021 WL 2941985, at *6 (W.D. Ky. July 13, 2021). "The Sixth Circuit has used the following factors to determine whether incentive awards are appropriate:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members;
> (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and
> (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation."

*Burnham*, 2020 WL 2065793, at *4; *see also Ross*, 2016 WL 7320890, at *5 (same). Counsel must provide specific documentation of the time spent by an award recipient. "To ensure that these amounts are not in fact a bounty," courts require "counsel [to] provide the district court with specific documentation—in the manner of attorney time sheets—of the time actually spent on the case by each recipient of an award." *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016).

The proposed settlement provides $5,000 to Love for her services. Settlement Agreement at 8–9. Due to the substantial benefit this settlement brings to those who opt in to the collective, the risk undertaken by Love in helping to lead the litigation, and the approximately 20 hours (and perhaps more) of time Love invested as the lead plaintiff in guiding this case, *see* Supplemental Briefing (DN 147) at 2–4, the Court agrees that this is a reasonable sum.

### E. The requested attorneys' fees are reasonable.

Congress authorized attorneys to recover reasonable fees if their clients recover under the FLSA. *See* 29 U.S.C. § 216(b); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The party requesting fees bears the burden of establishing the reasonableness of the requested award. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) ("The party seeking attorney's fees 'bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))). To carry their burden, the party must provide enough information to allow the Court to mete out "rough justice" in determining an appropriate award. *Rembert v. A Plus Home Health Care Agency*, 986 F.3d 613, 618 (quoting *Carter v. Hickory Healthcare, Inc.*, 905 F.3d 963, 970 (6th Cir. 2018)). At the end of the day, "the amount of the award is within the discretion of the judge."

*Fegley*, 19 F.3d at 1134.  But the Court's role isn't that of a "green-eyeshade accountant" when determining attorney fee awards.  *Rembert*, 986 F.3d at 616 (quoting *Carter*, 905 F.3d at 970).

"A reasonable fee is one that is adequate to attract competent counsel but does not produce windfalls to attorneys."  *Ross*, 2016 WL 7320890, at *5 (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).  "[L]awyers are entitled only to reasonable fees," which may prove "different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region."  *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020).  But in the class-action context, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Gascho v. Global Fitness Holdings*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential–Bache Properties,* 9 F.3d 513, 516 (6th Cir. 1993)).

Two methods of measuring an appropriate fee award—the lodestar and fund-percentage approaches—are available to courts in the exercise of this discretion.  *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).  The two measures generally align with the twin interests in compensating both work done and results achieved.  But "[t]hese two measures of the fairness of an attorney's award—work done and results achieved—can be in tension with each other.  The lodestar method of calculating fees 'better accounts for the amount of work done,' whereas 'the percentage of the fund method more accurately reflects the results achieved.'"  *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516).

> Both approaches have their pros and cons:
>
> > The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.  However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested.
> >
> > The lodestar method's listing of hours spent and rates charged provides greater accountability.  In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery.

*Rawlings*, 9 F.3d at 516.

The parties have asked the Court to follow the percentage-of-the-settlement-fund approach.  *See* Unopposed Motion at 17; Supplemental Briefing at 5–7.  They have also provided information regarding their hours and rates.  The Court agrees the former method supplies an appropriate

5

measure of fees here, though the Court reached this conclusion in part by assessing the latter method to confirm the reasonableness of the award. Here the two approaches generate roughly commensurate amounts, and the parties adopted the more conservative of the two. This corroboration confirms the reasonableness of the fee award approved in this Order.

"Under the percentage-of-the-fund analysis …, the Court must determine the total benefit to the class" and compare against it the requested attorneys' fees to assess whether the fee/benefit ratio is reasonable. *Ditsworth*, 2021 WL 2941985, at *5.

The total benefit includes "all amounts benefitting the class, including those amounts typically borne by the class, such as attorneys' fees and notice and administration costs." *Id.* (quoting *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018)); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 803 (N.D. Ohio 2010) (including "the Benefit Fund, the Reversion, Notice and Administration Costs, and Attorneys' Fees" in the "Total Class Benefit").[2] In this case, the total benefit is $650,000. The proposed settlement agreement initially allowed for $260,000 (40%) of that amount to be awarded as attorney's fees, costs, and expenses. Settlement Agreement at 8. But in supplemental briefing following oral argument, plaintiffs pared their request to $200,000 in attorneys' fees plus an additional $20,023.97 in litigation expenses—a total of $220,023.97.[3] Although the plaintiffs describe this as a reduction to one-third of the fund, the actual total is ever so slightly higher: 33.85% of total benefit funds.

The plaintiffs cite in-circuit authority recognizing awards of 33% and 40% as reasonable and approved. That range is a bit steeper, however, than the percentages that judges in this district have treated as presumptively acceptable. Many decisions have pointed to a range of 20% to 30%. *See, e.g.*, *Whitlock v. FSL Mgmt.*, No. 3:10-cv-562, 2015 WL 9413142, at *8 (W.D. Ky. Dec. 22, 2015), *aff'd*, 843 F.3d 1084 (6th Cir. 2016), (the 20–30% range is "generally approved" and 25% is "presumptive"); *Fournier v. PFS Investments, Inc.*, 997 F. Supp. 828, 832 (E.D. Mich. 1998) ("The 'benchmark' percentage for this standard has been 25% [of the common fund], with the ordinary range for attorney's fees between 20–30%."). Other courts, as plaintiffs note, have gone higher—rendering the plaintiffs' proposal here less than extraordinary. *See, e.g.*, *Brittmon v. Upreach, LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *1–2 (S.D. Ohio Nov. 8, 2018) (approving attorneys' fees that made up 40% of the total settlement fund); *In re Telectronics Pacing Systems*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) (the "range of reasonableness" for percentage-of-the-fund award is "between twenty and fifty percent of the common fund"); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (approving a 40% attorneys' fees award in a shareholder-

---

[2] Though refusing to adopt a hard-line rule, the Sixth Circuit allows the inclusion of funds potentially subject to reversion in the total benefit amount. *See Gascho*, 822 F.3d at 286–87; *Lonardo*, 706 F. Supp. 2d at 803. And the reasoning for this makes good sense: the attorneys litigated for the full sum—potential collective members' failure to opt-in doesn't reflect on their abilities and efforts in this case. *See Lonardo*, 706 F. Supp. 2d at 803.

[3] In a post-hearing filing, Gannett's counsel noted that the remainder of the funds originally slotted for attorneys' fees will revert to the Net Settlement Fund—increasing the amount available to potential members of the collective—and not to Gannett. *See* Defendants' Supplemental Filing (DN 146) at 1.

derivative action). Courts often apply yet another multi-factor test—the *Ramey* factors—when asked to determine the reasonableness of fees calculated by the percentage-of-the-fund method.

The 6 *Ramey* factors are:

> (1) the value of the benefit rendered to the plaintiff class;
> (2) the value of the services on an hourly basis;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of counsel involved on both sides.

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-1998, 2010 WL 3341200, at *9 (W.D. Ky. Aug. 23, 2010) (quoting *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009)).

Factors 1 and 3 clearly weigh in favor of the requested fee award. The benefit to the collective is apparent: counsel obtained a substantial award, which the collective will share equitably. Counsel also undertook significant risk by litigating this case on a contingency-fee basis. *Whitlock*, 2015 WL 9413142, at *9 ("[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery," so providing services on a contingency fee basis may support the reasonableness of requested fees.) (quoting *Telectronics*, 137 F. Supp. 2d at 1043). And counsel and Love *agreed* to a 40% contingency fee in advance of the settlement. *See* Unopposed Motion at 16; Notice Form (DN 124) at 3; Declaration of Clif Alexander (DN 136-2) at 7. That the "percentage of the recovery" was "agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989) (citations omitted); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18cv952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (citing *Blanchard* in an FLSA case). The discount to approximately 33% thus further cuts in favor of the amount requested.

The fourth factor also cuts in favor of the agreed-upon rate because, according to many courts, "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions ... benefits society." *In re Countrywide*, 2010 WL 3341200, at *11 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 524 (E.D. Mich. 2003)). Excessively cutting parties' agreed-upon rates might deter qualified counsel from taking on the risk of bringing types of cases Congress has authorized.

And the sixth *Ramey* factor also supports the fees requested: counsels' declarations explained, without rebuttal, their skill, experience, and dedication to this practice. *See* Amended Declaration of Clif Alexander (DN 144-2); Declaration of Robert E. DeRose (DN 144-3); *see also Whitlock*, 2015 WL 9413142, at *9.

The other factors don't so clearly cut in favor of granting or denying the fees requested. The fifth *Ramey* factor doesn't move the Court either way: nothing indicates that this case would be any easier or harder to litigate than other FLSA collective actions.

The second factor—the value of the services, as measured by hours and hourly rates—is worth a closer look. Courts often cross-check the requested fees under the lodestar method, as indicated above. *Whitlock*, 2015 WL 9413142, at *9; *In re Cardinal Health Inc. Secs. Litigs.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *cf. Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (such a cross-check isn't required). Counsel has provided ample records allowing the Court to calculate a potential lodestar award. Amended Declaration of Clif Alexander at 2–9, 22–42; Second Declaration of Robert E. DeRose (DN 147-3) at 10–21. By plaintiffs' calculation, the lodestar amount would be $259,499. Supplemental Briefing at 7. The hourly rates plaintiffs request trend higher than those typically awarded by federal courts in Kentucky, and this Order should necessarily not be read to bless these rates, given the Court's reliance on the alternative percentage-of-fund method.[4] But the proposed lodestar amount at least provides the sort of "rough justice" corroboration our precedents require, if not the green-eyeshade precision that might be appropriate in other contexts. *Rembert*, 986 F.3d at 618 (quoting *Carter*, 905 F.3d at 970).

The Court therefore refuses to disturb the plaintiffs' fund-percentage request in light of the agreed-to contingency fee, the substantial benefit provided to plaintiffs, and the attorneys' considerable experience in FLSA cases. *See Arp v. Hohla & Wyss Enters, LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *8 (S.D. Ohio Nov. 5, 2020).

Under the law of this circuit and the decisions of this district, therefore the requested fees are sufficiently reasonable to support the fee award proposed as part of this settlement. The Court grants the requested attorneys' fees ($200,000) and litigation expenses ($20,023.97), with the balance of the amount originally laid out in the settlement agreement ($260,000 – $220,023.97 = $39,976.03) added to the net settlement fund for distribution to the opt-in plaintiffs.

\* \* \*

Notice is the final item implicated by this motion. At the fairness hearing, counsel indicated that they had not yet sent prospective opt-in plaintiffs the notice form previously approved by the Court. Due to the Court's special role in this litigation, *see Mitcham*, 2019 WL 5496023, at *2, the Court asks that counsel file a revised proposed notice of settlement in the docket within 30 days of this order so that the Court can ensure the notice sufficiently advises

---

[4] The plaintiffs-side attorneys seek hourly fees ranging from $300 to $550 per hour. *See* Amended Declaration of Clif Alexander at 6 (stating a range of attorneys' fees of $350 per hour for associates to $550 per hour for partners); Second Declaration of Robert E. DeRose at 2 (stating a range of attorneys' fees of $300 per hour for associates to $550 per hour for partners). These rates undoubtedly fall on the high side of others approved in analogous fee-award decisions. *See, e.g., Ditsworth*, 2021 WL 2941985, at *6 (approving hourly fees that equated to $424.80); *Burnham*, 2020 WL 2065793, at *5 (approving partner's rate of about $400 per hour); *Hendricks v. Quickway Trans., Inc.*, No. 3:20-cv-710, 2021 WL 1235265, at *4 (W.D. Ky. April 2, 2021) ("[F]ederal courts in and around Kentucky recently have found that hourly rates between approximately $300 and $400 represented reasonable partner rates in employment disputes."); *Clark v. West Iris Transport, Inc.*, No. 18-168, 2020 WL 2781601, at *5–6 (E.D. Ky. Feb. 27, 2020) ($400/hour partner rate and $275/hour associate rate awarded in FLSA and Kentucky labor-law class action); *Kritcher v. Prudential Sec.*, 799 F. App'x 376, 378 (6th Cir. 2020) ($400/hour partner rate and $300/hour associate rate awarded in FLSA case after settlement).

potential collective members of their right to funds and their other rights and obligations under the settlement.

## ORDER

The Court grants the unopposed motion for settlement approval (DN 136) and, contingent on approval the parties' submission of the requested notice, dismisses this case with prejudice.

Benjamin Beaton, District Judge
United States District Court

September 24, 2021